DAVID G. SWARTZ v. J. C. REDFIELD, *et al.*

1. INDORSER; *When Demand and Notice are Necessary.* The indorsement of a note after maturity, is in effect the drawing of a new bill, payable on demand; and to hold the indorser, demand and notice of nonpayment are essential.

2. ——— Where the indorsers of an over-due note are at the time of the indorsement prosecuting an action thereon against the maker, which action is continued, and thereafter terminated adversely to them, on the ground that their interest in the note had ceased, *held,* that in order to charge them on their indorsement demand and notice were essential.

*Error from Allen District Court.*

THE action below was by *Swartz* as plaintiff, on a promissory note and indorsements. The note is as follows:

$987.            HUMBOLDT, Kas., June 8, 1871.

One day after date I promise to pay to the order of Redfield & Co. nine hundred and eighty-seven dollars, with interest thereon at 12 per cent. per annum, value received in labor and material furnished in building the Landreth Hotel.

J. L. LANDRETH.

"Redfield & Co." was a firm composed of *J. C. Redfield, W. A. Redfield,* and E. F. Wright. On the 10th of June 1871, said note was indorsed as follows: "Pay to the order of E. F. Wright: *Redfield & Co.*" February 7th 1872 an action was commenced on said note, and to foreclose a mechanics' lien on the "Landreth Hotel," by "J. C. Redfield, W. A. Redfield, and E. F. Wright, partners, etc., plaintiffs, against J. L. Landreth, Sophia L. Fussman, and Henry Nagle, defendants." Fussman and Nagle were joined as subsequent incumbrancers. While this action was pending another action was brought by *Swartz* as plaintiff, against said Landreth, and several others as defendants, to foreclose a mortgage on said "Landreth Hotel" given by Landreth to *Swartz* to secure certain notes held by him. In the last-mentioned action said "Redfield & Co." were joined with Landreth as defendants, and they filed their separate

answer, setting up the same facts as alleged by them in their action to foreclose said mechanics' lien, claiming a prior lien on said mortgaged premises to the amount of said note so given to and held by them. While these two actions were so pending, said Wright indorsed said note to *Swartz* as follows: "Pay to order of D. G. Swartz: *E. F. Wright.*" And at the same time Wright executed and delivered to *Swartz* the following paper, to-wit:

"In consideration of the sum of $987 in hand paid me by David G. Swartz, of Lancaster, Penn., I hereby guaranty to him said David G. Swartz that the claim of Redfield & Co. v. the Landreth Hotel, in Humboldt, Kas., is just, and in the amount of $987, as per promissory note dated at Humboldt, Kansas, June 8th, 1871, signed by J. L. Landreth, and that there is no legal set-off or defense against the same. Witness my hand this 10th day of July, 1872.

"E. F. WRIGHT."

Both of said actions were, at the July Term 1872 of the district court, referred to L. W. K. and N. F. A., for trial. The record (in this case) does not show what disposition was made of the action of "Redfield & Co. v. Landreth, and others," but one of the referees testifies that "it was dismissed by Redfield & Co." after said note had been transferred to *Swartz*. Another witness testifies that he was present when Wright indorsed the note and executed the guaranty to *Swartz*, as above, and that it was then agreed by *Swartz* and Wright, "that said note, being then in suit, as the property and claim of Redfield & Co., should be prosecuted to final judgment under the title in which it was instituted.", The record shows that the mortgage-foreclosure case of "Swartz v. Landreth, Redfield & Co., and others" was tried before said referees in November 1872; that before the trial Landreth deceased, and Watson Stewart as administrator of his estate had been substituted as a defendant; that the referees, in that case, and with respect to the answer and said claim of "Redfield & Co.," find as facts, "that after the making and delivering of said note as aforesaid, the said note was by writing on the back thereof made payable to the order of E. F. Wright, and also by

writing on the back thereof, the said note was made payable to the order of D. G. Swartz;" and as conclusion of law said referees find "that they, the said Redfield & Co., are not the legal owners or holders of said note so given by Landreth as aforesaid, and that they are not entitled to a personal judgment for the amount of money specified in said note, nor for any sum whatever." The referees made their report to the district court, and said report was confirmed November 18th, 1872. This action was commenced by *Swartz* on the 16th of January, 1873. He made Stewart, (as administrator of Landreth,) *J. C. Redfield, W. A. Redfield,* and *Moses Neal,* (as administrator of E. F. Wright, deceased,) defendants. Trial was had at the March Term 1873 of the district court. Findings and judgment in favor of *Swartz* against Stewart, as Landreth's administrator, for the amount of said note, ($987, and interest,) and against *Swartz* and in favor of the other defendants, for costs. From this last judgment *Swartz* appeals, and brings the case here on error.

*L. W. Keplinger,* for plaintiff in error:

1. The finding of facts is insufficient, one of the material facts proven not having been found upon. The testimony in the record shows that at the date of the transfer of the note sued on, Landreth, the maker of the note, was already dead, for Redfield & Co. at the date of said transfer were prosecuting their claim on said note before referees in an action wherein said Landreth's *administrator* was defendant. The present action was brought January 16th, 1873, within less than one year from Landreth's death, which occurred some time subsequent to February 8th, 1872, at which date summons was served upon him in the action brought against him by Redfield & Co. on the note now sued on by plaintiff. Therefore the court should have made an additional finding, that the assignment of the note by defendants, and the institution of this suit, took place within less than one year after Landreth's death. The mercantile law, like the common law, continues in force in this state only so far as it has not been

abrogated by statute; and this omitted finding brings this case within our statutory provisions respecting executors and administrators, by which demand and notice are not required: 12 Mass., 91; 22 Pick., 206; 10 La., 485; 11 Mo., 575; 1 Pars. on Notes, 364.

The evidence also shows that the defendants caused or procured the plaintiff to continue the prosecution of the claim in the name of the defendants; and the court should have found that this action of the defendants in causing said claim to be prosecuted after transfer, was a waiver of right to demand and notice.

2. Should the court decline to examine the evidence to see whether or not the proper findings of fact were made—if the findings of facts be correct—why should a party be compelled to apply for a new trial upon the facts? Why should the remedy reach farther than the error complained of? (22 Ind., 198.)

3. The conclusions of law are not supported by the findings of facts. We recognize the general rule that in case of transfer of negotiable promissory notes after maturity, the indorser is entitled to demand upon the maker, and notice within reasonable time; and that so far as demand and notice are concerned the parties stand upon the same footing as in case of parties to inland bills of exchange payable on demand. But we say the facts found show the defendants were not entitled to notice. (1 Pars. on Notes, 535.) At the date of the transfer of this note the defendants were and for six months had been attempting to collect this same note by suit against the maker. The continuance of this litigation was due to one or the other of two causes, either the maker of the note was unable to pay the note, or he was unwilling; and the defendants at the time of indorsing the note well knew that the maker was unable or unwilling to pay the note. How then can it be claimed they had reasonable grounds for believing the note would be paid? Where the fund drawn on is already in litigation (*at date of indorsement,*) demand and notice are

unnecessary to charge the indorser: 1 Pars. on Notes, 534; 18 La., 522.

The remarks of the court in the latter case may well be applied to the case. at bar: "This (a claim in litigation) was indeed a poor prospect for the collection of a bill of exchange, and. almost equal to the drawees having no funds in their hands belonging to the drawers."

4. The pendency of the suit of defendants against the maker of the note, and the continuation of said suit in the name of the defendants, was a continuing demand and a continuing refusal; and all the defendants had full knowledge of such demand and refusal. Payment was demanded by the suit brought by defendants against the maker of the note prior to its transfer, (Feb. 7, 1872,) and payment was again demanded when Redfield & Co. appeared before the referees and prosecuted their claim upon the note. The defendants had full notice, for they themselves prosecuted the claims; and such demand and notice inured to the plaintiff: 1 Cow., 252; 1 Hill., 57.

*J. B. F. Cates,* for defendants in error:

The only question presented by the record is, as to whether demand and notice of nonpayment was necessary to fix the liability of the defendants in error upon the note sued on. The contract of an indorser upon a note or bill is conditional, upon nonpayment by the principal debtor after due presentment and notice. Story on Prom. Notes, §§ 133, 135; Byles on Bills, 258, 282; Gen. Stat., p. 115, §§ 6, 7.

A bill or note indorsed after dishonor.is in the nature of a new bill payable on demand, and to hold an indorser thereon the same strictness, as to demand and notice, is required as in cases of indorsement before due. 18 Pick., 260; 9 Johns., 121; 2 N. H., 159; 21 Me., 455; 3 Hunt, 171; 18 Conn., 361; 3 Bailey, (S. C.) 457; 9 Ala., 153; 12 Cal., 308; 8 Serg. & R., 357.

It is claimed that there was demand and notice in the case of the note sued on; that a knowledge on the part of the de-

fendants that suit was being prosecuted on said note by this plaintiff against the principal debtor was waiver of further demand and notice. Suppose this to be proper demand, the suit was a continuing demand, and not complete until the termination of such suit. The notice required by the law-merchant is not, notice of demand alone, but *notice of non-payment after demand*, which in this case would have been *after* the action thereon was terminated. The defendants had no notice that judgment was not obtained thereon, and satisfied by execution, until the bringing of this action, so far as the record shows. Neither was there a motion for new trial in the court below.

The opinion of the court was delivered by

BREWER, J.: The material facts of this case are as follows: On the 8th of June 1871 J. L. Landreth executed his note due in one day after date to Redfield & Co. Thereafter Redfield & Co. indorsed to E. F. Wright, one of the partners in the firm of Redfield & Co., and on July 10th 1872 Wright indorsed it to the plaintiff. At the time of the indorsement to plaintiff, and for months prior, Redfield & Co. were prosecuting their claim on said note against the maker. This action (or their said claim,) was terminated adversely to them on the 18th of November 1872, on the ground, as appears from the report of the referees, that they had no interest in the claim. On the 16th of January 1873 this action was instituted by plaintiff, seeking to charge both the maker and the indorsers. No proof was made of demand by the plaintiff of payment from the maker, or notice to the indorsers. Were the latter liable? It is conceded that a bill or note indorsed after maturity is in the nature of a new bill, payable on demand, and that to hold an indorser thereon, the same strictness as to demand and notice is required as in the case of the drawer of an ordinary inland bill; but it is insisted that upon the facts shown the indorsers were not entitled to notice; that the rule is, that if the drawer had not at the time reasonable grounds to expect that the bill would be honored he is not

entitled to notice, and that as at the time of the indorsement the indorsers were vainly attempting to collect the note by suit they had no reasonable grounds to expect that the maker would pay it to the indorser. We are inclined to think that the facts as stated do not make an exception to the ordinary rule, and that no demand and notice having been shown the indorsers were not liable. The principle is thus stated in 2 Smith's Leading Cases, 61: "The whole principle of exception, then appears to be, that where the non-acceptance or nonpayment of the bill is caused by the fraudulent act of the drawer or indorser, or in other words, where the drawing or issuing of the bill, or the leaving it to be presented, is a fraud in any party liable on the bill, such fraudulent party is not entitled to notice, and it is believed that there are no other exceptions to the general rule requiring demand and notice. In some of the cases the rule is stated to be, that notice is excused wherever the drawer or indorser could not possibly be injured by the want of it; *Commercial Bank of Albany v. Hughes*, 17 Wend., 94; but practically that amounts to the same thing, for there is always in law a possibility of being injured by the want of notice, and the law will never refuse to take notice of that possibility except in case of a fraudulent drawer or indorser. The well-settled principle that bankruptcy, or notorious insolvency of the drawer, will not excuse notice, that having actual knowledge will not excuse regular legal notice, and that the holder neglecting to give legal notice is not permitted to show that no injury has in fact been sustained, all of which points are settled beyond the possibility of question, clearly show that the application of the fixed rule as to notice is no longer affected by what may once have been the reason for it." In the 1st vol. of Parsons on Notes and Bills, on page 535, the rule is differently stated, and in these words: "The true test in our opinion in each case is this: Had the drawer under the circumstances of the case a right to draw? This depends upon the fact whether he had a reasonable ground to expect that the bill would be honored, or not. If he had such reason to expect it to be honored, he is

entitled to a regular presentment and notice, and refusal to accept or pay; and if not so entitled, he cannot complain either for negligence in presenting and in forwarding notice, or for entire neglect to do either. The reasonable grounds required by law are not such as would excite an idle hope, a wild expectation, or a remote probability that the bill might be honored, but such as create a full expectation and a strong probability of its payment, such indeed as would induce a merchant of common prudence and ordinary regard for his commercial credit to draw a like bill." Now there was certainly no fraud in the indorsement of this note. It was a valid instrument, a legal promise to pay. No suggestion is made of anything tending to impeach it. Being a contract in writing, it, under our statutes, imported a consideration; (Gen. Stat., 183, § 7;) and there is nothing to raise a suspicion that full value was not given for it. To transfer a valid obligation given for value, involves nothing of fraud. If it be regarded as a new bill, it is a draft on funds, and an accepted draft at that. If it be said that there was no reasonable grounds to expect payment, no more is there when the maker or acceptor is notoriously insolvent; yet demand and notice in such a case are unquestionably necessary. Many of the most eminent English judges have expressed regrets that there was ever any exception made to the rule of demand and notice to charge a drawer, or indorser; and the current of authority tends to limit rather than extend the cases of exception. The indorsement effectuates two things — it transfers the title, and creates a conditional liability. The first is often in the contemplation of the parties at the time of the transfer, the only thing sought; and if afterward recourse is sought on the indorser, he may well insist on an exact compliance with all the steps necessary to change the conditional to an absolute liability. See further on this subject, Byles on Bills, pages 232, 234, and notes; Story on Prom. Notes, § 367; 3 Kent's Com., marginal page 110, and note. In this last citation the author says: " Nor does knowledge in the indorser, when he indorsed the paper of the insolvency of the maker of the note, or drawer

of the bill, do away the necessity of notice in order to charge him."

The judgment will be affirmed.

All the Justices concurring.