## THE WICHITA NATIONAL BANK v. F. S. WEEKS.
### No. 180.

ATTACHMENT—*on debt not due, does not apply to bank officer under paragraph 406, General Statutes of 1889.* While the liability of the officers and directors of a bank, under paragraph 406, General Statutes of 1889, for receiving deposits or contracting debts while the bank is insolvent, is in the nature of a penalty, and may be immediately enforced against such bank officers without first proceeding against the bank itself, it does not authorize an attachment action against a director on a contingent liability of the bank growing out of its having indorsed and guaranteed the payment of notes of a third party which have not yet matured, notwithstanding an allegation in the petition that the maker of the note "is insolvent" and that the bank was insolvent and known to the director who is sued to have been insolvent when the notes were so indorsed and guaranteed, and the money for them paid by plaintiff to the indorser.

Error from Butler District Court. Hon. C. W. Shinn, Judge. Opinion filed June 11, 1897. *Affirmed.*

These proceedings in error were brought to reverse a ruling of the District Court of Butler County, vacating an order of attachment which had been obtained by plaintiff in error at the commencement of its action against the defendant, F. S. Weeks.

Plaintiff's petition, which was filed January 31, 1891, alleges:

"That it is now, and at all times hereinafter mentioned was, a banking corporation duly organized and existing under and by virtue of the laws of the United States and doing business in the city of Wichita, Sedgwick County, Kansas, and more particularly under the 'Bank Act'; that the Farmers' State Bank of Augusta, Kan., was at all times hereinafter mentioned a corporation organized and existing under and by virtue of the laws of the State of Kansas, doing business in the city of Augusta, Butler County, Kansas; that now and at all times hereinafter mentioned, the Mercantile Company was a corporation duly or-

ganized and existing under and by virtue of the laws of the State of Kansas, and doing business in the city of Augusta, Butler County, Kansas, and that said Augusta Mercantile Company is insolvent and totally unable to pay any or all or any part of its just indebtedness; that said Farmers' State Bank at the times hereinafter mentioned was insolvent and in failing circumstances and unable to pay its liabilities to its just and legal creditors.

"Plaintiff further alleges that the officers of said banking institution were as follows: John Jacks, president; F. S. Weeks, vice-president; and E. R. Grant, cashier; who were duly appointed and elected and constituted a board of directors of said bank; and that F. S. Weeks, vice-president, E. R. Grant, cashier, and John Jacks were the board of directors of said bank known as the Farmers' State Bank of Augusta, Kan., doing business in the city of Augusta, Kan.

"Plaintiff alleges that now and at all times hereinafter mentioned the Farmers' State Bank of Augusta, Kan., was insolvent and in failing circumstances and unable to pay its liabilities to its just creditors; and that the said John Jacks, president, F. S. Weeks, vice-president, and E. R. Grant, cashier, individually and as a board of directors of said bank, having full knowledge of such insolvency, the said defendants did create a debt to the Wichita National Bank, Wichita, Kan., plaintiff herein, in the sum of one thousand dollars, on the third day of January, 1891, and did give as evidence of such indebtedness two promissory notes, one signed January 3, 1891, due February 4, 1891, for the sum of five hundred dollars, a true copy of which note is hereto attached, marked Exhibit 'A' and made a part of this petition; one dated January 3, 1891, due on the fourth day of March, 1891, for the sum of five hundred dollars, a true copy of which note is hereto attached marked Exhibit 'B' and made a part of this petition; plaintiff further alleges that it is the owner and holder of said notes, and that the same will become due and payable at the times stated in this petition.

"That said F. S. Weeks, by reason of his having been vice-president and director of said banking insti-

tution, knew the same to be insolvent and in failing circumstances, and creating said debt on the third day of January, 1891, is liable to the plaintiff personally for the amount of said notes, Exhibits, 'A' and 'B,' by virtue of the statute in such cases made and provided."

EXHIBIT "A."

AUGUSTA, KAN., January 3, 1891.

For value received, on the fourth day of February, 1891, we promise to pay to the order of Farmers' State Bank the sum of five hundred dollars at the Farmers' State Bank at Augusta, Kan., without interest if paid when due, but if not paid when due then to draw interest at the rate of ten per cent. per annum from date.    For a valuable consideration we waive all benefits derived from and under the exemption laws of the State of Kansas.

THE AUGUSTA MERCANTILE COMPANY,
*E. R. Grant, Secretary and Treasurer.*

Indorsed : For value received we hereby guarantee payment of the within note and waive demand and notice of protest on same when due.—FARMERS' STATE BANK, by E. R. Grant, Cashier.

Exhibit "B" is like the above except the date of maturity, which is March 4, 1891.

Defendant's answer admitted the averments of the petition,—" that plaintiff is a corporation as alleged in plaintiff's petition ; also that the Farmers' State Bank of Augusta is a corporation as alleged ; also that the Augusta Mercantile Company is a corporation as alleged, and that John Jacks, F. S. Weeks and E. R. Grant were directors and officers of the Farmers' State Bank as alleged in plaintiff's petition ; " and denied generally all the other allegations of the petition.

Upon an attachment affidavit filed by the plaintiff's attorney, an order of attachment under section 230 of the Code was granted by the probate judge.    Among other things this affidavit stated :

" Said affiant further says that said claim against

said defendant will become due as follows: *First.* Five hundred dollars and interest on the seventh day of February, 1891. *Second.* Five hundred dollars and interest on the seventh day of March, 1891."

On the —— day of February, 1891, defendant filed a motion to discharge the attachment, which motion contained eight grounds; and affidavits were afterwards filed by both parties concerning certain of said grounds. The district judge heard this motion at chambers on April 6 upon the first six grounds, not considering those requiring evidence. They are as follows:

"*First.* For the reason that no sufficient affidavit of attachment has been filed by the plaintiff herein. *Second.* For the reason that no sufficient bond or undertaking in attachment has been filed by the plaintiff. *Third.* For the reason that the pretended order of attachment issued in this action is void upon its face. *Fourth.* For the reason that the pretended order of attachment issued in this action was issued without authority, or right in law, and is wholly void. *Fifth.* For the reason that the petition filed by the plaintiff herein does not state facts sufficient to constitute a cause of action against this defendant. *Sixth.* For the reason that the court has no jurisdiction of the subject-matter of this action."

*Fred W. Bentley,* and *David Smyth,* for plaintiff in error.

*J. V. Daugherty,* for defendant in error.

MILTON, J. The issue before the trial judge was this: Was the action prematurely brought? The briefs of counsel present the same issue.

Under paragraph 406, General Statutes of 1889, when an insolvent bank contracts a debt, it becomes the debt of each of the officers who had knowledge of the bank's condition, or who in the discharge of his

698    WICHITA NATIONAL BANK v. WEEKS.

S. Dept.          Opinion.   Milton, J.         5 Kan. App.

duties ought to have known its condition; and if such officer is sued in a proper case the only defenses allowed are that the bank was not insolvent, or that he did not know its condition and could not have known it by the exercise of proper care.

It is necessary for us to inquire somewhat as to the nature of the bank's obligation upon the two notes which are the basis of this action. By the indorsement in the nature of a guaranty the bank became both an indorser and a guarantor of the notes. Considered as an indorser — and the briefs of both parties consider it such — the bank's liability on the notes was conditional. In *Swartz v. Redfield* (13 Kan. 556), Mr. Justice Brewer, in the opinion of the court, quotes the following from Smith's Leading Cases, vol. II, p. 61:

"The well-settled principle that bankruptcy or notorious insolvency will not excuse notice (to the indorser) . . . is settled beyond the possibility of question."

And in the same case he says:

"The indorsement effectuates two things — it transfers the title, and creates a conditional liability. The first is often, in the contemplation of the parties at the time of the transfer, the only thing sought; and if afterward recourse is sought on the indorser, he may well insist on an exact compliance with all the steps necessary to change the conditional to an absolute liability."

And in the same case it is stated in a quotation from Kent's Commentaries, that knowledge by the indorser, when he indorsed the paper, of the insolvency of the maker of the note or drawer of the bill, does not dispose of the necessity of notice to charge such indorser.

WICHITA NATIONAL BANK v. WEEKS.    699

June 11, 1897.    Opinion.  Milton, J.    C. Div.

In *Doolittle v. Ferry* (20 Kan. 231), the court, by Mr. Justice Brewer, says :

"That from such indorsement [to John Doe or order] the law implies a well-defined contract, and that such contract casts a conditional liability on the indorser, is conceded. . . . The law gives to an indorsement a twofold force. It operates to transfer title ; it is the assumption of a conditional liability."

As a guarantor, the bank's liability of course differs from that of an indorser, and, as is said by a text writer, "is more onerous."

In vol. II, section 1753, Daniel's Negotiable Instruments, it is said :

"The guarantor's liability . . . is secondary and collateral. And, in general, the guarantor contracts to pay, if, by the exercise of due diligence, the debt cannot be made out of the principal debtor."

We observe that the petition does not allege that the maker of the notes was insolvent when they were made or indorsed, nor that the indorser knew such to be the fact. So far as we can gather, the action was brought on the theory that the defendant's liability had accrued at the time, and by reason of, the indorsement of the notes by the bank.

In view of the fact that the bank's liability, either as indorser or guarantor, was conditional or collateral, an action could not have been brought against it upon the notes until they were due. Hence, it would seem to follow that an action to recover under paragraph 406, General Statutes of 1889, cannot be maintained until the primary liability of the bank has accrued.

Section 190 of the Code provides that the plaintiff in a civil action may have an attachment against the property of the defendant upon certain grounds. The ninth ground is that the debt was fraudulently contracted, or the obligation fraudulently incurred.

The provisions of section 230 of the Code allow an action upon a claim before it is due and an attachment for causes therein stated, but these causes do not embrace the ground of fraud as stated in section 190. It seems proper, therefore, to regard the indorsement and guaranty in this case as being governed by the rules ordinarily applicable to such transactions.

We conclude that the petition and affidavit in attachment were insufficient to support the attachment proceedings, that the action was prematurely brought, and that the ruling of the trial court upon the motion to discharge the attachment was correct.

The order and judgment discharging the attachment will be affirmed.