## DEMOLLI v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 16, 1906.)

### No. 2,214.

1. POST OFFICES—DEPOSIT OF OBSCENE MATTER IN THE MAIL.

It is not essential to the commission of the offense prescribed by section 3893 of the Revised Statutes [U. S. Comp. St. 1901, p. 2658] that the entire contents of the newspaper, or other parcel, deposited in the mail, be objectionable in character, or that the offender's responsibility for its being put in the mail extend to its entire contents. Nor is it essential that the objectionable matter be deposited in the mail by the offender himself, or by another acting under his express direction, because he is equally responsible if it is deposited therein as a natural and probable consequence of an act intentionally done by him with knowledge that such will be its natural and probable effect.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Post Office, § 50.

Nonmailable obscene matter, see note to Timmons v. United States, 30 C. C. A. 79.]

2. SAME.

One who causes obscene matter written by him to be printed in a newspaper, intending thereby to bring it to the attention of the readers of the paper, and knowing at the time that the established and regular mode of transmitting the paper to its readers is by the use of the mail, knowingly causes the objectionable matter to be deposited in the mail, within the meaning of section 3893 of the Revised Statutes [U. S. Comp. St. 1901, p. 2658], when in such regular course the paper, with the objectionable matter printed therein, is deposited in the post office for mailing and delivery.

3. CRIMINAL LAW—MOTION IN ARREST OF JUDGMENT.
     Judgment can be arrested only for matter appearing on the face of the record, and the evidence is not part of the record for this purpose.
     [Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 2423.]

4. SAME—DEFICIENCY IN JUDGMENT ENTRY—SUPPLIED BY REFERENCE TO OTHER PARTS OF RECORD.
     Where the judgment as entered in a criminal case fails to specify the offense for which the sentence is imposed, the deficiency may be supplied by reference to what appears in other parts of the record.
     Hook, Circuit Judge, dissenting.
(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Colorado.

R. S. Morrison and John H. Murphy (E. D. De Soto and J. W. Woten, on the brief), for plaintiff in error.

Earl M. Cranston, U. S. Atty. (Ernest Knaebel, Asst. U. S. Atty., on the brief).

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

VAN DEVANTER, Circuit Judge.   Charles Demolli was tried and convicted under section 3893 of the Revised Statutes [U. S. Comp. St. 1901, p. 2658] on an indictment charging him with having knowingly deposited and caused to be deposited in the post office at Trinidad, Colorado, for mailing and delivery, a newspaper called "Il Lavoratore Italiano" and containing certain obscene, lewd, and lascivious articles. The indictment contained two counts, which differed, in that one had reference to an issue of the paper dated March 13, 1904, and containing an article entitled "Lettera Aperta," and the other had reference to an issue of the paper dated one week later and containing an article entitled "Next Time."

The first question presented for our consideration arises on the court's refusal at the close of the evidence to direct a verdict of not guilty, and is:   Was there any substantial evidence that the objectionable matter was, by the defendant, knowingly deposited, or caused to be deposited, in the post office for mailing or delivery?   It is not questioned that there was ample evidence of the deposit in the post office, for mailing and delivery, of the newspapers containing the objectionable matter, but only that there was any evidence that the defendant was responsible for the objectionable matter being so put in the mail.

While there was evidence that the defendant had personally participated in mailing prior issues of the newspaper, it is practically, and we think correctly, conceded by counsel for the government that there was really no evidence that he personally participated in mailing the two issues named, or expressly directed or requested that they be mailed.   But there was substantial evidence tending to show these facts:   The defendant was one of the founders of the paper, had been its editor, and took an interest in its continued existence.   At the times of the acts charged he was national organizer of the labor union which

owned the paper, and in whose interest it was conducted. He was in the habit of frequenting its printing office, and that was the place where he did all his writing. He had been instrumental in having the paper admitted to the mails as second-class matter, had personally participated in mailing prior issues of it, and knew that the established and regular mode of distributing it among its readers was by the use of the mails. While having no authority over its publication or the mode of its distribution, he was permitted to write for it as a correspondent. Testifying in his own behalf, he said: "The paper was a union paper, and necessarily I sent some articles to be published— correspondence." He wrote the objectionable articles, and caused them to be published in the paper over his signature. In an affidavit made shortly thereafter he stated that the articles were "published by my direction and not with the knowledge or consent of either Mr. Wm. Howells or John Simpson." Howells and Simpson were the controlling officers of the paper. His purpose in having the articles published was to bring their contents to the attention of the readers of the paper. The first article concluded with the words "Next Time," the title of the second article, which opened with the sentence, "What I promised to the readers I will maintain," and concluded with the words, "In the next number the thrust to the other monkeys." There was otherwise an obvious connection between the two articles, and they were much the same in character. They appeared in regular issues of the paper, and these were in due course put in the process of distribution through the mail.

A more extended statement of the evidence is not necessary. We think what has been recited constitutes substantial and persuasive evidence that the defendant knowingly caused the objectionable matter to be put in the mail. By this it is not meant that there was any evidence that he was responsible for the mailing of the newspapers, as such, or for the mailing of anything more than the objectionable articles published by his direction. It is not essential to the commission of the offense prescribed by the statute that the entire contents of the newspaper, or other parcel, deposited in the mail, be objectionable in character, or that the offender's responsibility for its being put in the mail extend to its entire contents. Nor is it essential to the commission of the offense that the objectionable matter be deposited in the mail by the offender himself, or by another acting under his express direction, because he is equally responsible if it is deposited therein as a natural and probable consequence of an act intentionally done by him with knowledge at the time that such will be its natural and probable effect. To illustrate: If one intentionally and secretly inserts a lascivious writing in an unsealed letter written by another, which he knows is intended to be transmitted through the mail, and which is afterwards sealed and put in the mail for transmission, without the presence of the objectionable writing being discovered, he is as guilty under the statute as if the letter were his, and, with the objectionable writing, were deposited in the mail by another acting under his express direction. So also if, with the knowledge and consent of the writer, one intentionally causes a lascivious picture to be

inserted in an unsealed letter written by another, which he knows is intended to be transmitted through the mail, and which is afterwards sealed and put in the mail for transmission with the objectionable picture therein, he is guilty under the statute, although he did not say anything about mailing the letter or picture. In either case he is guilty, because he intentionally does an act, the natural and probable consequence of which, as known at the time, is that the objectionable matter will be deposited in the mail along with the other contents of the letter. In the line of causation his act is a proximate cause of the objectionable matter being put in the mail.

If the evidence before recited was true, as was found by the jury, the defendant was responsible for the mailing of the objectionable matter. He set in operation and made use of an agency which, as he knew at the time, would, according to its established and regular course, carry the objectionable matter through the mail to the persons to whose attention he designed it should be brought; and it does not lie with him to say that whoever was in charge of the paper might have rejected his articles, that the typesetter might have refused to put them in type, or that whoever in regular course deposited them in the post office might have refused to do so. When the articles were published in the paper by his direction, the mailing of them as part of the paper followed in natural sequence as an incidental or subordinate act produced by their publication, and was in no sense an independent act or self-operating cause which interrupted or changed the natural sequence of events, or produced a result which could not have been reasonably anticipated. Union Pacific Ry. Co. v. Callaghan, 6 C. C. A. 205, 56 Fed. 988; Missouri Pacific Ry. Co. v. Moseley, 6 C. C. A. 641, 646, 57 Fed. 921; Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S 469, 475, 24 L. Ed. 256; The G. R. Booth, 171 U. S. 450, 460, 19 Sup. Ct. 9, 43 L. Ed. 234; Insurance Co. v. Boon, 95 U. S. 117, 130, 24 L. Ed. 395.

As was said in the last case:

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

We think the court properly refused to direct a verdict of not guilty.

Complaint is made of the overruling of a motion in arrest of judgment. The indictment did not set forth the names of any of the persons to whom the newspapers were addressed, but stated that they were unknown to the grand jury, and the defendant, conceiving that the evidence produced at the trial showed that the grand jury had been informed of the names of at least two of these persons, moved in arrest of judgment for that reason. The motion was properly overruled. Judgment can be arrested only for matter appearing on the face of the record, and the evidence is not part of the record for this purpose. 1 Bishop, New Crim. Proc. § 1285; Wharton's Cr. Pl. & Pr. (9th Ed.) §§ 759, 766; Bond v. Dustin, 112 U. S. 604, 608,

5 Sup. Ct. 296, 28 L. Ed. 835; Van Stone v. Stillwell, etc., Co., 142 U. S. 128, 135, 12 Sup. Ct. 181, 35 L. Ed. 961; Adams v. Shirk, 43 C. C. A. 407, 414, 104 Fed. 54, 61.

Objection is made to the sentence imposed on the defendant because it does not contain a formal adjudication of his guilt or specify the offense for which he was sentenced. If the judgment as entered were alone to be examined, the objection would be well taken. But the record of the proceedings in the District Court shows, with such appropriate connections, the return of the indictment by the grand jury, the indictment itself, and every other step in the progress of the case, including the verdict and sentence, as to avoid any doubt respecting the offense of which the defendant was found guilty by the jury and on account of which sentence was imposed by the court. The case is in this respect within the ruling in Pointer v. United States, 151 U. S. 396, 419, 14 Sup. Ct. 410, 38 L. Ed. 208, where it was held that all parts of the record are to be interpreted together, effect being given to all, if possible, and that a deficiency at one place may be supplied by what appears in another. The objection is therefore not well taken.

As no error is disclosed by the record, the judgment is affirmed.

HOOK, Circuit Judge (dissenting). Demolli was jointly indicted with Howells and Simpson for depositing and causing to be deposited in the mails copies of a newspaper containing obscene, lewd, and lascivious articles. The newspaper was a four-page weekly published at Trinidad, Colo. The names of Howells and Simpson appeared therein as being respectively the president and manager of the company owning it, but, being engaged in other affairs, they paid little attention to the performance of their official duties. Howells and Simpson were acquitted because it was shown that they did not know of the insertion of the objectionable articles. Demolli was convicted.

While Demolli wrote the articles and left them in the office of the newspaper for publication, it is conceded, as indeed it must be, that there was no evidence that he participated directly or indirectly in the mailing of papers containing them or directed or requested that they be mailed. He was neither the proprietor of the newspaper nor an employé of the proprietor in that business. He was merely a voluntary correspondent who contributed articles to its columns without compensation. He had no power to require any publication therein or to direct anything whatever to be done in or about the conduct of the business. As it is conceded that Demolli had "no authority over its publication or the mode of its distribution," his prior connection with the newspaper is without legal significance, except as proof of knowledge of what was customarily done. With the admission of knowledge that the mails were used in the usual distribution of the newspapers, no line of distinction can be judicially drawn between him who organized and once managed the enterprise but did so no longer, and one who, having equal knowledge, had never been connected with the management at all. And this is true, although much reliance seems to be placed upon Demolli's connection with the

mailing of prior issues of the newspaper. Obviously that fact has no relevancy other than as proof of knowledge, since it is not claimed that those papers contained anything objectionable. All is said, when it is said he had knowledge of the course of business.

It is not contended that Demolli, in contributing the objectionable articles, purposely took advantage of the absence or ignorance of Howells and Simpson, or that he acted in a surreptitious manner. Aside from the character of the articles, there appeared nothing unusual or exceptional in the transaction in question. The articles seem to have been accepted and published with the assent of those in the actual and active charge of the making up, printing, publishing, and mailing of the newspapers. Pagiani had charge of the translations and editorship, Smith of the mechanical work and mails, and Bartlett of the typesetting. None of these men were under the control or subject to the direction of Demolli, who, as already observed, merely wrote the articles and left them in the office for publication. In that sense he directed or caused their publication.

My associates uphold the conviction and sentence of Demolli upon the theory that, although he was not responsible for the mailing of the newspapers as such, nevertheless he was the author and contributor of the objectionable articles, and knew that in the customary distribution of the newspapers they would go through the mails. It seems to me that this conclusion cannot be sustained by either reason or precedent. However reprehensible such conduct may be, the writing of obscene, lewd, and lascivious articles is not an offense under the act of Congress, nor is the publication of such articles in a newspaper. The specific, particular offense denounced by the statute is within very narrow limits—it is the mailing of obscene, lewd, and lascivious articles, depositing them in the mails, or causing them to be so deposited.

Doubtless, when Demolli contributed the objectionable articles, he had not, in point of actual fact, the remotest thought of the use of the mails in connection therewith. It is true, however, that had he reflected it would have occurred to him, as it would have come to the mind of any one familiar with the methods employed in such business. It is therefore said that the crime is complete, because he is held to have intended and to be criminally responsible for what are called the natural and probable consequences of his act. In other words, he is held to have contemplated the acceptance of his articles, the putting of them into type without change or emendation, the issue of the newspapers containing them, and finally the deposit of the newspapers in the mails. And all of these acts he is also held criminally responsible for, although they were done independently of him and by persons not in his service or under his control, and who were in no sense his agents or employés. Those in charge of the conduct and operation of the newspaper business were neither confederates of Demolli acting concurrently with him in a common design, nor were they engaged in his service. The actual mailing of the newspapers was the result of intervening, independent, and responsible human agencies, acting neither for Demolli nor by his

direction. And these considerations, it seems to me, should compel his acquittal of the particular offenses charged in the indictment.

To reach the conclusion announced there is a blending by the court of an evidential presumption of intent with the doctrine of proximate cause and effect drawn from the law of civil damages, and it is difficult to discern how far each is separately relied on to make up the essential elements of the crime charged. To warrant conviction there must have been a combination of both intent and the forbidden act. If either is lacking, no crime was committed. There is an evidential presumption that one intends the natural and probable consequences of an act intentionally done (Agnew v. United States, 165 U. S. 36, 50, 17 Sup. Ct. 235, 41 L. Ed. 624; 1 Bishop Cr. Proc. §§ 1099–1101); but it cannot reasonably be contended that this presumption of intent in turn establishes the substantive act itself. So, then, we turn to the various authorities cited, most of them cases of negligence, which announce a rule in the law of civil damages. In such cases the sufficient connection between actionable cause and effect is the probable. In Union Pacific v. Callaghan, the first one cited, a defendant is held civilly responsible in damages for "those results that a reasonably prudent man would have anticipated," and this is but a variant expression of the doctrine of all such cases. But how would it do to say, upon the authority of such decisions, that every one is criminally responsible for all those results of his acts that a reasonably prudent man would have anticipated? While negligence is sometimes a crime, as a general thing criminal responsibility and civil liability in damages for negligent acts or omissions proceed upon different considerations and involve the application of different rules. With the unqualified introduction of the doctrine of proximate cause and proximate results as applied in cases of negligence into the body of the criminal law, the latter, it seems to me, will then have burst its ancient barriers and have covered new and unfamiliar fields.

It is true that, if one intentionally and secretly inserts a lascivious writing in an unsealed letter written by another, which he knows is intended to be transmitted through the mail, and which is afterwards sealed and put in the mail for transmission without the presence of the objectionable writing being discovered, he is as guilty under the statute as if the letter were his, and, with the objectionable writing, were deposited in the mail by another acting under his direction. But this is so, not by reason of the doctrine of proximate cause, but because he who placed the objectionable writing in the unsealed envelope constituted the other his agent for the express purpose of mailing it, and he thereby caused the mailing just as clearly and effectually as if he had intrusted the letter to a messenger boy to be taken to the post office. But what Demolli did lacks the proximity in both deed and purpose to the specific offenses denounced by the statute and charged in the indictment necessary to justify his conviction. It is too far removed for criminal responsibility. If he can be held, why not also the typesetter, the proof reader, the pressman, and all others who, being cognizant of the objectionable articles, were engaged upon

the line of activities in the business of the newspaper ending with the deposit of the papers in the post office?

It is a matter of common knowledge that in these days the post office establishment of the United States is employed to a greater or less degree in the distribution of almost every newspaper and magazine. So, if the doctrine of the foregoing opinion prevails, every one who merely communicates an article or inserts an advertisement or notice in such a newspaper or magazine can be held to have used the mails in violation of sections 3893, 3894, or 5480 of the Revised Statutes [U. S. Comp. St. 1901, pp. 2658, 2659, 3696], if the character of the article contributed or the advertisement or notice inserted brings it within the comprehensive enumeration of nonmailable matter contained in those sections; and in such a case it will be held that the intent of the defendant to use the mails may be presumed from his knowledge that the publishers themselves employ the mails in the distribution of their publication, and further, that he actually caused the nonmailable matter to be deposited in the mails, because the fact of such deposit ought to have been foreseen in the light of the attendant circumstances.

The indictment in this case charges that Demolli did knowingly deposit, and cause to be deposited, in the post office, newspapers containing objectionable articles. It is admitted that he had no authority over the publication or mode of distribution of the newspapers, and it is disclaimed that there was "any evidence that he was responsible for the mailing of the newspapers, as such," but it is said he is criminally responsible for the mailing of the objectionable articles contained in the newspapers. In each count of the indictment the charge is confined by explicit terms to the mailing of the newspapers. Of these charges Demolli is in effect held not guilty; but his conviction is upheld because of his authorship of two articles in the newspapers, which it is said he did not cause to be mailed. I do not think that the existing legislation of Congress goes so far. The lines of criminal statutes are not elastic or adjustable, and the extension or stretching of them by judicial authority, even to cover conduct grossly offensive to public morals and decency, as was that of Demolli, is productive of far more evil than could result from the escape of the individual offender.

A penal Code of China authorized the judge, if he could find no criminal law precisely applicable, to be guided by the spirit of the provisions enacted for those cases most resembling that under consideration (Staunton's Penal Code of China, § 44, p. 43), but in this country, as was observed in Todd v. United States, 158 U. S. 278, 282, 15 Sup. Ct. 889, 890, 39 L. Ed. 982:

"It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms. There can be no constructive offenses, and before a man can be punished his case must be plainly and unmistakably within the statute."