## UNITED STATES OF AMERICA v. SIMON POPOV, ALIAS CHARLES W. BOYD, AND GREGORY GUSTOHIN.

### November 8, 1913.

1. *Post offices—Deposit of obscene matter in the mail—Principal; accessory:* One who prepares for another person an obscene communication with the knowledge that the other is to deposit it in the post office for mailing and delivery to a third person, may by virtue of Penal Code, sec. 332, be indicted and convicted as a principal under Penal Code, sec. 211.

2. *Criminal law—Accessory before the fact:* Penal Code, sec. 332, authorizes the charging of an accessory before the fact as a principal.

3. *Same—"Aid", "abet":* Definitions of, discussed.

*Indictment:* On motion in arrest of judgment.

*S. E. Hannestad* for the motion.
*C. C. Bitting,* Assistant U. S. Attorney, contra.

CLEMONS, J.   The defendants, Simon Popov and Gregory Gustohin, were indicted on a charge of depositing, and causing to be deposited, in a post office obscene matter for mailing and delivery. Penal Code, sec. 211. Gustohin plead guilty. Popov plead not guilty and on trial by a jury was convicted. He now enters a motion in arrest of judgment, based on the same grounds as an earlier motion for a directed verdict of acquittal, viz: that according to the evidence he had nothing to do with the admitted fact of the deposit of such non-mailable matter in the mails, but only at Gustohin's dictation and because Gustohin could not write, wrote the obscene matter on a postal card, already bearing a printed picture of an extremely lewd and indecent nature, and wrote on the envelope in which the card was enclosed the name and address of a young woman to whom it was mailed, and to whom he then knew it was to be mailed,—in other words, that Popov's acts were not the acts of a principal but at most were nothing more than those of an accessory before the fact. The assistant district attorney contends that, even on this statement of Popov's, he was properly indicted as a principal within the provisions of Penal Code, sec. 332, which reads:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

[3] There are authorities which might afford foundation for an argument in support of the motion, but I am convinced that they "originated at a time when criminal lawyers puzzled their wits and taxed their ingenuity to invent metaphysical shades of distinction." See language of Manning, J., in *State v. Poynier,* 36 La. Ann. 572, 1 Enc. L. &

P. 238, n. 4. The argument that the word "abet" colors all its associate words in section 332 with the idea of assistance at the time and place or at least contemporaneous assistance, seems to me unreasonable It is true that authorities are at hand to support various shades of meaning of the word "abet" and its associate "aid," some of them in line with the defendant's contention. For instance, the words "aid" and "abet" have been held to be "pretty much the synonyms of each other, . . . comprehend [ing] all assistance rendered by acts, words of encouragement or support, or presence, actual or constructive, to render assistance, should it be necessary:" *Raiford v. State*, 59 Ala. 106, 1 Enc. L. & P. 106, n. 22; while these words have elsewhere been held not to be synonymous: that "to abet is to encourage, counsel, incite, or instigate the commission of a crime, the word indicat(ing) the act of an accessory before the fact; to aid is to support, the word describing an accessory after the fact." *State v. Empey*, 79 Iowa, 460, 44 N. W. 707. Still other authorities seem to hold that the word "abet" connotes such participation as formerly made one an accessory *at* the fact: these are the numerous expressions appearing to make "presence" an essential factor. Thus Cowell, also Fleta, as cited by Black, Law Dic., 2d ed., 7, tit. "abettor", says, "The distinction between abettors and accessories is the presence or absence at the commission of the crime." Black, ubi sup., also cites American decisions for the proposition, that "presence and participation are necessary to constitute a person an abettor."

[1] [2] Enough has been said to indicate the confusion of authorities, and, also, to suggest a possible reason for the enactment of section 332, above, making certain persons all principals. Moreover, the only prior statutes known to the court, relating expressly to accessories before the fact are Rev. Stat. 5323, reading:

"Every person who knowingly aids, abets, causes, procures, commands, or counsels another to commit any murder, robbery, or other piracy upon the seas, is an accessory before the fact to such piracies, and every such person being thereof convicted shall suffer death,"

and Rev. State. sec. 5427, reading:

"Every person who knowingly and intentionally aids or abets any person in the commission of any felony denounced in the three preceding sections, or attempts to do any act therein made felony, or counsels, advises, or procures, or attempts to procure, the commission thereof, shall be punished in the same manner and to the same extent as the principal party."

Now, these provisions are both repealed by the Penal Code, sec. 341, and there is enacted section 332 above quoted, which enlarges the provisions of these repealed sections of the Revised Statutes, so as to make them of general application, though, it is true, without any direct expression to indicate that accessories before the fact are thereby intended. Moreover, while the Penal Code makes here, or elsewhere so far as I have found, no specific provision as to accessories before the fact, it provides in the very next section for acessories after the fact, sec. 333, and later, sec. 341, repeals the sections comprising the chapter of the Revised Statutes relating to punishment of accessories after the fact, Rev. Stat. secs. 5533-5535, the new provision being such an enlargement of the repealed sections as to be of general application. The intent would seem to be to cover the whole ground, to provide for all accessories, both those before the fact as well as those after the fact, the former by section 332 and the latter by section 333. Such was the intent deduced from a similar but even narrower enactment of the State of Kansas, the provision there being that "any person who counsels, aids, or abets, in the commission of any offense may be charged, tried, and convicted in the same manner as if he were a principal." From this language the Kansas supreme court held, "The intention

of the legislature . . . is obvious. It authorizes the charging of an accessory before the fact as a principal." *State v. Cassidy*, 13 Kans. 550, 555, Brewer, J.

Independent of this very high authority, there is no reason why we should give the word "aid" the qualified meaning of "then and there aid," especially as the associated words "induce" and "procure" and perhaps also "counsel", are words which aptly and primarily, philologically, denote antecedent action as contrasted with contemporary action. The language is broad enough, in my opinion, to include the furnishing, as Popov did here, of the means of committing an offense. There are, I am informed, some decisions taking a very narrow view of the word "deposit," in the phrase "deposit in the mails," or similar expressions, used in the statutory definition of offenses against the postal service. Under the peculiar language of the statute, such rulings may be plausible, but if they are sound, we might just as well say that on a charge of injury to letter boxes, under Penal Code, sec. 198, by Gustohin's having exploded dynamite therein, Popov's participation by furnishing the means of committing the offense,—by preparing the explosive for use by Gustohin for the special purpose by Gustohin intended and by Popov known, would not be the rendering of "aid" within the meaning of section 332.

The interesting opinions of then Circuit Judge Van Devanter in the cases of *Demolli v. United States*, 144 Fed. 363, 365-366, and of *Burton v. United States*, 142 Fed. 57, 62, go a long way to support an indictment for participation as an accessory and are authority for the contentions of the assistant district attorney, but, in my view of the facts of the case at bar, it is not necessary to go so far as the court went in those cases just cited, and for that reason, if not for the reason that I am not quite prepared to approve their conclusions on the facts there, those authorities have no influence in my present ruling. The strong

dissent of Circuit Judge Hook in the *Demolli* case may be noted.

The foregoing discussion may well be concluded with the context of the above-quoted language of Judge Manning:

"The distinction between principals and accessories before the fact is in most cases a distinction without a difference, and often requires nice and subtle verbal refinements to express it. In some of our states it has been abolished by statute; in others judicial decisions have attenuated it until it is perceptible only by a close mental effort. The fact is, it is not a creature of statutory law, but wholly of judicial construction, the origin of which is so vague and indeterminate that the text writers have not found out where to place it. It is supposed to have originated at a time when criminal lawyers puzzled their wits and taxed their ingenuity to invent metaphysical shades of distinction, such for instance as that between principals and accessories *at* the fact, which once existed, and is now exploded. The distinction between principals and accessories before the fact is fast following its kindred technical refinement." *State v. Poynier,* 36 La. Ann. 572; 1 Enc. L. & P. 238, n. 4.

But conceding that if the question were to be determined solely on Popov's version of the facts, it would be one upon which lawyers might disagree, nevertheless, it is to be noted in the evidence that the witness McDuffie, chief detective of the Honolulu police, testified to this defendant's confession, "I sent that picture" (meaning the card bearing the printed picture and written matter, above described), made in answer to the direct question, "Who sent that picture?" There is also to be noted, the testimony of post office inspector Jarvis, that this defendant confessed to him that "both [Popov and Gustohin] prepared the card and both went to the post office to mail it," though Popov himself testified here that Gustohin went alone to the post office and that Popov went elsewhere This evidence was for the jury, and if believed by the jury would warrant their

finding Popov to have been a principal within a narrow definition of that term, even if he were not a principal under the broad provision of section 332 of the Penal Code. It certainly would not be for the court to say that Popov's testimony is true, making him merely one who participated in preparation of the objectionable matter for the mail, and that McDuffie's testimony to Popov's confession of having himself "sent" it and Jarvis's testimony to Popov's confession that he and Gustohin both "went to the post office to mail it," are untrue.

By reason of the foregoing considerations, the motion should be overruled. It is so ordered.