**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gwendolyn Euala SHUMWAY,**
**Defendant–Appellant.**

**No. 89–7562.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 14, 1990.

C. Knox McLaney, III, Montgomery, Ala., for defendant-appellant.

James E. Wilson, U.S. Atty., Charles R. Niven, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, GODBOLD, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Gwendolyn Shumway appeals her conviction after a jury trial on two counts of

mailing obscene matter in violation of 18 U.S.C. § 1461. Shumway contends that the evidence produced at trial was insufficient to support the jury's finding that she knowingly used the mails for sending obscene matter. We agree.

## I.

Because we are reviewing this case for sufficiency of the evidence, we set forth the facts as presented by the United States government. Between 1984 and 1986, Shumway had a personal relationship with Larry Tarver. During that period, on several occasions, she allowed Tarver to videotape her engaging in various sexual acts. She terminated the relationship with Tarver in late 1986 or 1987, and has had nothing to do with him since. Subsequently, Tarver used an advertisement in a swinger magazine to sell copies of these tapes through the mail.

In 1988, the United States Postal Inspector, William B. Reeves, investigated an individual by the name of Jim Fleener in Louisville, Kentucky. Reeves found one of Tarver's tapes at Fleener's work place which had been mailed to Fleener on August 12, 1988, showing a return address of Larry Gwen in Montgomery, Alabama. Reeves also found another tape postmarked Montgomery, Alabama and dated September 19, 1988 with the same return address. This address was in the vicinity where Shumway had lived with Tarver. Both tapes depicted Shumway engaged in sexual acts. Fleener testified that in the summer of 1988, he had ordered the tapes after seeing an ad in a magazine.

In February of 1989, Shumway was interviewed by B.B. Hedrick, a U.S. Postal Inspector. Hedrick did not have the interview transcribed, but rather took notes and then wrote a report summarizing what he had learned. According to Hedrick's trial testimony, Shumway told him that she had met Tarver about four years previously. She admitted having posed for tapes, and stated that she thought the tapes were for fun, but then learned he was trading tapes with other people. Hedrick did not inquire what Shumway meant by "trading."

Shumway also recalled that Tarver mentioned someone sending him a check in the mail for a videotape. Further, it was her impression that Tarver "was not a big time operator, that he was in it basically for fun."

Shumway also knew Tarver had an ad in a swingers magazine involving a girl named Laura, whom Shumway only knew was Tarver's previous associate, and that Tarver corresponded with people who responded to the ad. Hedrick did not ask Shumway whether the ad concerning Laura or the correspondence had anything to do with videotapes. Shumway informed Hedrick that she did not get involved in Tarver's letter writing and that she never knew her name had been used in an advertisement. Shumway further told Hedrick that she received small amounts of money from Tarver, but that she did not consider this pay for the videos, but rather money to help her out when she ran short. She informed Hedrick that she had not participated in any tapes made by Tarver since 1986, and that she had left him in September of 1987.

## II.

Section 1461 of 18 U.S.C. provides in relevant part as follows:

Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section [to be obscene material] . . . shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

At trial, the judge instructed the jury that "the defendant can be found guilty [of violating 18 U.S.C. § 1461] only if all of the following facts are proved beyond a reasonable doubt: First, that the defendant knowingly used the mails for the conveyance or delivery of certain articles as charged; second, that the defendant knew at the time of such mailing the general nature of the content of the matter so mailed; and third, that the matter so mailed was obscene."

The jury was further informed that "the mailing element may be established in two ways. The government may prove beyond a reasonable doubt that the defendant mailed the obscene tapes *or the government may prove beyond a reasonable doubt that the defendant intentionally committed an act, the natural and probable consequence of which would be the mailing of the obscene tapes, and she intentionally committed the act with knowledge at the time that the mailing of the obscene tapes would be its natural and probable effect.*" (emphasis added).[1]

In this case, the government does not argue that the defendant did the actual mailing, but contends that Shumway may be held responsible for the mailing because she knew, when she made the tapes, that they would be mailed. Shumway stipulated that she had voluntarily participated in the production of the two videotapes that were alleged to have been sent through the mails and further stipulated that the images on these tapes were obscene within the meaning of section 1461. Shumway contends, however, that the evidence set forth at trial was insufficient to support the conclusion that she knew, at the time she made the tapes, that the "natural and probable" consequence of making them was that Tarver would put them in the mail.[2]

### III.

◼ In judging the sufficiency of evidence, the standard of review is whether the evidence, when viewed in the light most favorable to the government, proves the defendant's guilt beyond a reasonable doubt. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hernandez,* 896

F.2d 513, 517 (11th Cir.1990). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *United States v. Poole,* 878 F.2d 1389, 1391 (11th Cir.1989) (per curiam). Furthermore, "[i]n applying this standard all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is substantial evidence to support it.... However, a conviction must be reversed, if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt." *Hernandez,* 896 F.2d at 517 (citations omitted).

In order to prove use of the mails under the charge given to the jury, the government must set forth sufficient evidence to establish at least two facts: first, that Shumway knew that the natural and probable consequence of her actions would be the sending of videotapes through the mail, and second, that she had this knowledge *at the time she made the tapes that are the subject of this indictment.*

◼ We turn first to the facts put before the jury bearing on Shumway's knowledge that her making of videotapes would result in the tapes being sent through the mail. According to Inspector Hedrick, Shumway knew: (1) that Tarver was trading tapes with other people; (2) that Tarver mentioned a guy sending him a check in the mail for a videotape; (3) that Tarver did not make much money from the tapes; and (4) that Tarver had an ad in a swinger magazine involving him and a woman named Laura, and that he also corresponded with people who answered this ad.[3] We determine that, taken together, this evidence is sufficient to allow a reasonable jury to conclude that *at some point* Shum-

---

1. The italicized portion of the charge mirrors the language in *Demolli v. United States,* 144 F. 363, 366 (8th Cir.1906). Although the Eleventh Circuit has not explicitly adopted the *Demolli* standard as a permissible means of establishing the mailing element under § 1461, the parties to this case do not dispute the trial judge's use of the *Demolli* language in the jury charge.

2. At the conclusion of the government's case, Shumway's attorney made a motion for judg-

ment of acquittal on this ground, which was denied. At the close of all the evidence, she renewed her motion for a judgment of acquittal, which was again denied. Finally, a post-trial motion for a judgment of acquittal was denied with a written order from the trial judge.

3. The government did not establish that this advertisement had anything to do with videotapes.

way became aware that the tapes she made would probably be sent through the mail.

This determination, however, does not end our inquiry regarding sufficiency of the evidence. The government must also show that Shumway possessed this knowledge at the time she posed for the tapes that were the subject of the indictment.

In this case, the question of the defendant's knowledge at the time of her actions is crucial because the making of a videotape in and of itself has no inherent relation to the use of the mails. A nexus can only be established if the government proves that the defendant possessed knowledge, at the time she made the videotapes, that would lead her to foresee that they eventually would be mailed.

The lack of an inherent relation distinguishes this case from those in which the nature of the act itself provides proof of the actor's knowledge at the time. A classic example of such a case is the prosecution of an individual who has ordered or requested obscene material. In such a case, we would have no problem concluding that a natural and probable consequence of ordering and receiving obscene material through the mail is that the material will be deposited in the mail. *See United States v. Carmack,* 910 F.2d 748 (11th Cir. 1990); *United States v. Hurt,* 795 F.2d 765, 770 (9th Cir.1986), *cert. denied,* 484 U.S. 816, 108 S.Ct. 69, 98 L.Ed.2d 33 (1987); *United States v. Johnson,* 855 F.2d 299, 306 (6th Cir.1988). Additional proof on the question of when the defendant became aware of the consequences of his or her actions is unnecessary because the act of ordering material through the mail subsumes the use of the mails.

■ In contrast, use of the mails is not inherent in the act of making an obscene videotape.[4] Thus, the government was required to put forward evidence on the question of when Shumway became aware that Tarver would send the tapes through the mail. Turning to the evidence bearing on the question of timing, we first note that the jury was not informed of the precise dates upon which Shumway made the videotapes that were the subject of the indictment. The evidence showed only that they were made sometime between 1985 and September of 1986, the point at which her relationship with Tarver ended.

Evidence presented at trial relating to when she acquired knowledge that Tarver sent tapes through the mail consisted of the following:

[Prosecutor]: Did she have any knowledge of his selling tapes?

[Hedrick]: Yes, sir.

Q: What was that knowledge?

A: She recalled, for instance, that he told her that a fellow had sent him a check in the mail for a tape.

Q: Did she know this—when did she know this?

A: It would have been—

[Defense Attorney]: I object unless he knows, unless he can say when—

Q: When did she say that she knew this, Mr. Hedrick?

A: She said she knew that since she knew Larry Tarver and after, within the past four years.

Q: At what time in the past four years did she obtain knowledge that he was selling tapes and received the check in the mail?

A: She said most of her dealings with him were during 1986.

Q: Was this at the time that she made the video tapes?

---

**4.** The government argues that due to the bizarre nature of the sexual acts performed on the tapes, the jury could reasonably infer that the defendant knew the tapes would be distributed through the mails.

We disagree with the government's implicit suggestion that the content of films, without more, can provide sufficient basis for a jury's finding of "use of the mails" within the meaning of § 1461. To allow such an inference would eviscerate the mailing aspect of the offense, and allow a conviction based solely upon the jury's reaction to the contents of the film.

Moreover, such an inference seems particularly inappropriate in a case such as this one where the defendant did not pose as the result of a business relationship, but was instead involved in a personal relationship with Tarver at the time she made the videotapes.

A: She said when she made most of the video tapes.

We conclude that Shumway's statement to Hedrick that she learned of the check mailing sometime during her relationship to Tarver is simply too vague to allow a reasonable jury to find that she acquired this knowledge before making the two videotapes involved in the counts against her. In the absence of such knowledge, we hold that there is not sufficient evidence to sustain a finding that Shumway knew, at the time she made the videos, that a natural and probable consequence of her actions would be the mailing of obscene material.[5] Because the government has not put forth sufficient evidence to demonstrate "knowing use of the mails" under the charge given by the trial court, we REVERSE Shumway's conviction on both counts.

---

5. The only other evidence relating to timing is Hedrick's testimony that Shumway knew Tarver was trading tapes "when she was making these videos." We find, however, that even if the jury could reasonably infer that Shumway knew that Tarver was "trading" tapes when she made the videos, this evidence was insufficient to show a knowing use of the mails because the government never presented evidence that the "trading" Shumway referred to involved the mails rather than swapping in person. The only evidence that supports the inference that Shumway knew Tarver sent the tapes through the mail instead of trading in person is her knowledge of the check. As the above excerpt indicates, the government failed to establish that she knew of the check prior to making the tapes. Absent this piece of evidence, "a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt." *Hernandez,* 896 F.2d at 517.