**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Antonio HERNANDEZ, Hector Giral,**
**Yolanda Bauta,**
**Defendants–Appellants.**

No. 88–5957.

United States Court of Appeals,
Eleventh Circuit.

March 14, 1990.
As Amended April 16, 1990.

Kathy Hamilton, Coconut Grove, Fla., court-appointed, for Hernandez.

Donald L. Graham, Raskin & Graham, P.A., Miami, Fla., for Bauta.

John Bergendahl, Lisa A. Rosenthal Asst. Federal Public Defenders, Miami, Fla., for Giral.

Dexter W. Lehtinen, U.S. Atty., Andres Rivero, Lynne Lamprecht, Linda Collins Hertz, Miami, Fla., for U.S.

Before FAY and EDMONDSON, Circuit Judges, and HALTOM *, District Judge.

FAY, Circuit Judge:

A jury convicted appellants Yolanda Bauta, Hector Giral and Antonio Hernandez for conspiracy to possess cocaine with intent to distribute and possession of more than 500 grams of cocaine with intent to distribute. Appellant Bauta challenges her conviction, alleging that the evidence was insufficient to support the charges against her and that the unprofessional conduct of one of the prosecution's witnesses rendered the trial unfair. Appellant Giral also argues insufficient evidence and further maintains that the district court erroneously permitted the jury to consider evidence of a prior conviction for possession of cocaine. Appellant Hernandez protests that because he did not participate in any way in the trial, the district court erred in allowing the prosecution to introduce evidence of prior convictions for conspiracy and possession of marijuana. We AFFIRM the determinations of the district court with regard to all the appellants and the jury verdict convicting Bauta and Hernandez. We REVERSE the conviction of Giral.

---

* Honorable E.B. Haltom, U.S. District Judge for the Northern District of Alabama, sitting by designation.

## I. BACKGROUND

On November 16, 1987, Detective Pablo Garcia, through arrangements set up by a confidential informant, was contacted on his beeper by Roberto Mercado. When Detective Garcia called the number left by Mercado on the beeper, the woman who answered the phone, later ascertained to be appellant Bauta, identified the location as Seventh Avenue Auto Sales before forwarding the call to Mercado. In the ensuing six telephone conversations between Mercado and Garcia, which Garcia recorded, they negotiated a deal to exchange one kilogram of cocaine for $14,000. In the last conversation, Mercado told Garcia that the person delivering the cocaine would be at Seventh Avenue Auto Sales in forty minutes. At that point, Garcia gathered several of his fellow officers at the Coral Gables Police Department and set up surveillance around Seventh Avenue Auto Sales to monitor whatever might transpire in his transaction with Mercado.

Garcia and the informant met Mercado at the car lot of Seventh Avenue Auto Sales at approximately 4:30 P.M. When Garcia asked Mercado for the "merchandise," Mercado replied, "They have it with them," and pointed to a gray car occupied by appellants Bauta and Hernandez. R2-40-41. However, after Mercado introduced Garcia to Bauta and Hernandez, it became evident that Bauta and Hernandez did not have the cocaine. The four of them[1] waited and chatted at the car lot until sometime between 6 and 6:30 P.M. when a beige, four-door, 1982 Mercury Cougar drove onto the car lot. Hernandez indicated that this was the car for which they had waited. Garcia told Mercado to have the driver of the Cougar park next to Garcia's car, ostensibly to facilitate the deal, but actually to allow the surveillance team to best observe what would occur. The Cougar was occupied by the driver, Reinaldo Aquino, and a passenger, appellant Giral.

Both Aquino and Giral got out of the car and went to the trunk. Garcia asked Aqui-

---

1. Or possibly the five of them. The witnesses differ as to when the informant left the scene.

no whether he had "it" with him. Aquino replied that he had only one and if Garcia wanted another one, he would have to come to "our" house to get it. R2–49. Garcia then asked to check it, and Aquino opened the trunk as Garcia and Giral stood by. Aquino handed Garcia a blue and white plastic bag containing a package wrapped in yellow tape, which later proved to contain cocaine. Just as Garcia received the package, Giral, according to Garcia, "picked up on something," and walked away from the car to the Burger King across the street. R2–49–52. Moments later, Garcia gave the arrest signal. Bauta, Hernandez, Mercado and Aquino were arrested at the car lot. Giral was arrested at Burger King, where he was found at a pay phone, holding on to a dead receiver.

Mercado and Aquino eventually pleaded guilty to possession with intent to distribute; the government dismissed the conspiracy charge against them. Bauta, Hernandez and Giral pleaded not guilty. After a two-day trial, the jury found all three guilty of conspiring to possess with intent to distribute and possessing with intent to distribute more than 500 grams of cocaine.

## II. STANDARD OF REVIEW

Three types of grievances are lodged by appellants. Bauta and Giral challenge the sufficiency of the evidence to convict them. Giral and Hernandez question the admission under Federal Rule of Evidence 404(b) of extrinsic evidence of their prior crimes. Bauta additionally disputes the district court's denial of defense counsels' motions for a mistrial to remedy the prejudice to her right to a fair trial allegedly caused by Garcia's unprofessional conduct as a witness for the government.

This court most recently restated the standard of review for sufficiency of the evidence in *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir.1989) (per curium):

> This Court must view the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80,

62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and determine whether the jury could have found defendant guilty beyond a reasonable doubt. *See United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir. 1987). The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial. *See United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

" 'In applying this standard all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is substantial evidence to support it.... ' " *United States v. Pintado*, 715 F.2d 1501, 1503 (11th Cir.1983) (per curiam) (quoting *United States v. Davis*, 666 F.2d 195, 201 (5th Cir. Unit B 1982)). However, "[a] conviction must be reversed, 'if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt.' " *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983) (quoting *United States v. Marx*, 635 F.2d 436, 438 (5th Cir. Unit B Jan. 1981)).[2]

The district court's admission of the extrinsic offense evidence against Giral and Hernandez "will not be reversed absent a clear abuse of discretion." *United States v. Edwards*, 696 F.2d 1277, 1280 (11th Cir.) (citing *United States v. Dothard*, 666 F.2d 498, 501 (11th Cir.1982)), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983); *see also United States v. De Parias*, 805 F.2d 1447, 1453–54 (11th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3189, 96 L.Ed.2d 678 (1987); *United States v. Williford*, 764 F.2d 1493, 1497 (11th Cir. 1985). Regarding Garcia's testimony at trial, "[a]n appellate court may reverse an appellant's convictions on a claim of governmental misconduct only if, in the context of the entire trial and any curative

---

**2.** The Eleventh Circuit in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

instruction by the district court, the misconduct may have prejudiced substantial rights of the accused." *United States v. Collins*, 779 F.2d 1520, 1534 (11th Cir. 1986). Further, " '[p]rejudicial testimony will not mandate a mistrial when there is other significant evidence of guilt which reduces the likelihood that the otherwise improper testimony had a substantial impact upon the verdict of the jury.' " *United States v. Anderson*, 782 F.2d 908, 916 (11th Cir.1986) (quoting *United States v. Rodriguez–Arevalo*, 734 F.2d 612, 615–16 (11th Cir.1984) (citations omitted)).

## III. DISCUSSION

### A. *Sufficiency of the Evidence*

#### 1. Conspiracy

■ For us to uphold the conspiracy convictions, the government must have proven beyond a reasonable doubt that a conspiracy existed, that appellants knew of the conspiracy, and that appellants voluntarily joined the conspiracy. *See, e.g., United States v. Alvarez*, 837 F.2d 1024, 1027 (11th Cir.), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2003, 100 L.Ed.2d 234 and 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988); *United States v. Sullivan*, 763 F.2d 1215, 1218 (11th Cir.1985); *Vera*, 701 F.2d at 1357 (11th Cir.1983). These elements may be shown through direct or circumstantial evidence. *Sullivan*, 763 F.2d at 1218; *Vera*, 701 F.2d at 1357. Association with a co-conspirator or presence at the scene of the crime is insufficient to prove participation in a conspiracy. *Sulli-*

*van*, 763 F.2d at 1218; *Vera*, 701 F.2d at 1357. However, "presence is a material and probative factor which the jury may consider in reaching its decision." *United States v. Kincade*, 714 F.2d 1064, 1065 (11th Cir.1983). In cases brought under 21 U.S.C. section 846,[3] such as the one we review today, the government need not prove the commission of an overt act in furtherance of the conspiracy, although such action can serve as circumstantial evidence establishing knowing participation in a conspiracy. *Vera*, 701 F.2d at 1357; *accord Alvarez*, 837 F.2d at 1027.

### *Appellant Bauta*

■ We believe that in Bauta's case, the government satisfactorily proved all three elements to convict Bauta of conspiring to possess cocaine with intent to distribute. Clearly there was an agreement to violate the narcotics laws involving, at the very least, Mercado and Aquino. Although the testimony of the government's witnesses and Bauta's witnesses differs on many points,[4] we are constrained to make all credibility choices in favor of the jury verdict. *See Pintado*, 715 F.2d at 1503. When we discount the conflicting statements made by Bauta's witnesses, we are left primarily with the testimony of Detective Garcia. He related that he first encountered Bauta at Seventh Avenue Auto Sales when he asked Mercado for the "merchandise" and Mercado told him that "they have it with them," indicating Hernandez and Bauta. R2–40–41. After being introduced to Bauta and Hernandez, Garcia

**3.** Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C.A. § 846 (West Supp.1989).

**4.** Bauta and her witnesses give an account of a single mother of good reputation trying to provide for her family despite a debilitating illness who, after being fired from her job at Seventh Avenue Auto Sales, was given one last chance by her boss to make a quick $100 commission by showing cars to Hernandez. After picking up Hernandez from some unidentified intersection, she drove him back to the car lot, where she encountered the informant, an ex-employee of

Seventh Avenue Auto Sales, Mercado, her former co-worker and Garcia, to whom she was introduced. Because of her illness, she allowed Hernandez to inspect the cars himself and stayed by her car talking to the other men and various persons whom she knew from work, except for when she went into the office to telephone her children. Drugs were never discussed at any time. When Aquino's car pulled up, she stated that his car was parked the equivalent of two football fields away from where she was, and even further from Hernandez. She had no idea what had been taking place until the police appeared and she was arrested, either a few seconds or seven to ten minutes later, according to two different witnesses. *See* R2–142–86; R3–210–27.

asked them if they had "it." R2–42. Hernandez replied that "it" had not yet arrived and looked at Bauta, who left to make a phone call. *Id.* When Bauta returned, she informed Garcia that "la mercancia" was en route and to wait. R2–42, 46–47. As the time wore on, Garcia feigned impatience and threatened to leave, at which point Bauta wrote a phone number on a piece of paper and gave it to Garcia, telling him that it was her home number and that "[i]f we can't do it here today, call me and we will do it in my house." R2–43–44, 46–47, 65. When Aquino's car finally arrived, Bauta and Hernandez both waved at the car, and Bauta said, "Thank God they are here." R2–47, 78. Garcia remembered Bauta being at the trunk of Aquino's car when it was opened and the cocaine was delivered. R2–49.

Garcia's statements are corroborated by the testimony of Sergeant Joe McNichol who was in the surveillance van with another detective, monitoring the events in the car lot both visually and aurally. Sergeant McNichol did not understand most of the discussion that took place between Garcia and the others, as they spoke in Spanish. McNichol did see, however, when Bauta wrote on a piece of paper and handed it to Garcia. R2–97. He also saw Bauta and Hernandez waving down Aquino's car. *Id.* Finally, he too placed Bauta at the trunk of Aquino's car as the cocaine was being delivered. R2–98.

These facts indicate that Bauta was more than simply present at the scene of the crime, more than a knowledgeable bystander, more than merely associated with the other conspirators. Her knowledge of and participation in the conspiracy is shown by her checking by telephone to ensure that the deal would go through, by her offer to complete the transaction at her house if Garcia could not wait for the cocaine to be delivered at the car lot, and by her recognition and waving down of Aquino's car. The jury had sufficient evidence to find Bauta guilty beyond a reasonable doubt of conspiracy under 21 U.S.C. section 846.

### Appellant Giral

■ The government's case against Giral is far less convincing. Essentially, the government's case against Giral consists of Giral's presence in Aquino's car and at the trunk when Aquino delivered the package to Garcia, Giral's walking away after catching Garcia's eye, Giral's talking to a dead phone, and Giral's prior conviction of cocaine possession. R2–48–52, 83, 100–03, 136. Yet Giral's mere association with Aquino or presence at the transaction does not prove that he was a part of the conspiracy. Even in conjunction with his "flight" to Burger King Giral's presence cannot support a conspiracy conviction. *See Pintado*, 715 F.2d at 1504. The evidence of Giral's prior conviction could serve to show that he had the requisite intent to join the conspiracy, as discussed below. The intent to join a conspiracy, however, presumes the knowledge that a conspiracy exists, and the government presented no evidence showing that Giral had any knowledge of the conspiracy. *Cf. Ingram v. United States*, 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959) (conspiratorial intent cannot exist without knowledge; evidence of knowledge must be clear and unequivocal). All the facts presented involving Giral took place in the few minutes between the arrival of Aquino's car and Giral's departure when the package was given to Garcia. The government offered nothing linking Giral to the confidential informant, to Mercado, or to any of the discussions with Mercado, Bauta, or Hernandez.

Viewing the facts in the light most favorable to the government, we can surmise that Giral's association with Aquino may have been criminal, that Giral's presence at the scene of the crime could have been because of his involvement in the conspiracy, that Giral's abrupt departure might have occurred because he caught on to Garcia, was guilty and hoped to avoid arrest, and that Giral's intent in this case could have been identical to his intent in the narcotics crime for which he was convicted in 1985. We cannot find, however, that the government proved beyond a reasonable doubt that Giral was a member of this particular conspiracy to sell a kilogram

or two of cocaine to Garcia. We hold that there was insufficient evidence to convict Giral of conspiracy under 21 U.S.C. section 846.

2. Possession with Intent to Distribute

 Appellants were also convicted under 21 U.S.C. section 841(a)(1).[5] For these convictions to stand,

> the government had to prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute. All three elements can be proven by either direct or circumstantial evidence. Evidence of surrounding circumstances can prove knowledge. Constructive possession is sufficient for the possession element, and can be established by showing ownership or dominion and control over the drugs or over the premises on which the drugs are concealed. Intent to distribute can be proven circumstantially from, among other things, the quantity of cocaine....

*United States v. Poole,* 878 F.2d 1389, 1391–92 (11th Cir.1989) (per curiam) (citations omitted); *see also United States v. Marx,* 635 F.2d 436, 440 (5th Cir. Unit B Jan. 1981) (constructive possession is the knowing power or right to exercise dominion or control over a proscribed substance and can be joint or exclusive).

Again the evidence sufficiently supports Bauta's conviction while failing to prove beyond a reasonable doubt Giral's guilt. The same facts which sustain the conspiracy conviction against Bauta make it plain that, as one of the conspirators, she constructively possessed what she knew to be approximately one kilogram of cocaine and facilitated the exchange of that cocaine for $14,000. *Cf. United States v. Rosado–Fernandez,* 614 F.2d 50, 53 (5th Cir.1980) (one conspirator's undisputed possession of cocaine used to convict co-conspirator of pos-

session even though the latter never had physical control over the drug). Similarly, the facts which fail to demonstrate that Giral participated in the conspiracy do not show that Giral exercised any dominion or control over the package of cocaine or that he had any uninvoked power or right to do so. Nor did Giral own or control the car that contained the cocaine. Additionally, it is debatable whether Giral knew that the package contained cocaine, given that, on the facts in evidence, he had no contact with or sight of the package until the trunk was opened to deliver the package to Garcia, at which point the cocaine was swathed in yellow tape and contained within a blue and white bag. Without the necessary elements of knowledge and possession, the demonstration of his intent via his prior possession conviction has no value. The government did not prove beyond a reasonable doubt that Giral possessed with intent to distribute the cocaine in question.

### B. *The 404(b) Evidence*

 The government introduced evidence of prior convictions against appellants Giral and Hernandez to prove the element of intent required for the crimes of conspiracy and possession with intent to distribute a controlled substance. The seminal case in this Circuit on the admissibility of evidence of extrinsic offenses is *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). In that case we said that

> [Rule 404(b)][6] follows the venerable principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character.... Without an issue other than mere character to which the extrinsic offenses are relevant, the probative val-

---

5. **(a) Unlawful acts**

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

21 U.S.C. § 841 (1982).

6. **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

ue of those offenses is deemed insufficient in all cases to outweigh the inherent prejudice. Where, however, the extrinsic offense evidence is relevant to an issue such as intent, it may well be that the evidence has probative force that is not substantially outweighed by its inherent prejudice. If this is so, the evidence may be admissible.

*Id.* at 910. The test for admissibility breaks down into a two-part test: first, is the extrinsic offense evidence relevant to an issue apart from the defendant's character; and, second, does the evidence meet the requirements of Fed.R.Evid. 403.[7] *Id.* at 911; *see also Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). Even before assessing admissibility, the judge must first determine whether the offense in question was actually committed and whether a jury could reasonably conclude that the defendant committed the offense. *Beechum,* 582 F.2d at 912–13; *see also Huddleston,* 485 U.S. at 686–89, 108 S.Ct. at 1500–01.

■■ In the context of intent,

the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

*Beechum,* 582 F.2d at 911. If the evidence is found relevant, the probative value "must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference." *Id.* at 914. Thus, for example, if the government has a strong case on intent without the extrinsic offense, or if intent is not contested, then the prejudice to the defendant will out-

weigh the marginal value of the extrinsic offense evidence and it will be excluded. *Id.* An evaluation of the probative value of the evidence must also consider the similarity between the extrinsic and charged offenses and the time gap between the two offenses. *Id.* at 915; *see also United States v. Dorsey,* 819 F.2d 1055, 1061 (11th Cir.1987), *cert. denied,* 486 U.S. 1025, 108 S.Ct. 2002, 100 L.Ed.2d 233 (1988); *United States v. Wyatt,* 762 F.2d 908, 911 (11th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986).

■■ Giral does not deny that he had been convicted in 1985 for possession with intent to distribute cocaine. Hernandez, however, contests whether the government provided enough evidence so that a jury could reasonably conclude that he was the Antonio Hernandez convicted of conspiracy and possession with intent to distribute marijuana in 1981. The evidence before the judge was that appellant was identified as Antonio Hernandez, that an Antonio Hernandez had been convicted by a federal court for conspiracy and possession and sentenced to a six-year term, and Detective Garcia's unchallenged testimony that, while they were waiting for the cocaine to arrive, appellant Hernandez had told Garcia that he was on probation.[8] R1–55; R2–43, 136. We believe that a reasonable jury could conclude from these facts that the Hernandez convicted in 1981 was the same Hernandez before them at trial. The trial court did not abuse its discretion in determining that the evidence of the Hernandez conviction was relevant to appellant Hernandez.

■■ Both appellants contend that the extrinsic offense evidence served only to depict them as convicted criminals with a propensity toward crime. The government asserted at trial that its introduction of this evidence bolstered its proof of the criminal

---

7. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
Fed.R.Evid. 403.

8. In fact, when counsel for Hernandez argued to the bench against the admission of the evidence of his conviction, she never articulated the possibility that the Antonio Hernandez before the court might not be the Antonio Hernandez convicted in 1981.

intent of appellants. Under *Beechum,* if the intent involved in the extrinsic offense is the same as that of the charged offense, then the extrinsic act is "relevant ... to an issue other than propensity because it lessens the likelihood that the defendant committed the charged offense with innocent intent." 582 F.2d at 913. Giral's prior conviction for possession with intent to distribute cocaine obviously involved the intent to distribute cocaine. In this case, the government accused him of intentionally joining a criminal agreement to distribute cocaine and with intentionally distributing that cocaine. Notwithstanding that we find that he was convicted wrongly by the jury, the trial judge did not err in determining that Giral's intent in the prior crime was practically identical to the intent involved in the crimes charged in this case, and that the first prong of the *Beechum* test was met. Hernandez's 1981 convictions involved identical statutory violations to those with which he was charged in this case, distinguishable only in that the drug in the earlier conviction was marijuana whereas this case involved cocaine. We do not view this as a material distinction; the element of intent in the extrinsic and charged offenses was the same.

Finally, both appellants argue that the probative value of the extrinsic offense evidence was substantially outweighed by its undue prejudice because neither of them contested the issue of intent, the extrinsic and charged offenses had not been shown to be sufficiently factually similar, and the time lapse between the two sets of offenses greatly diminished the probity of the prior acts. None of these arguments have any validity. Although neither Giral nor Hernandez participated in the trial except to cross-examine the government's witnesses, both of them pleaded not guilty to the charges brought against them. The law in this Circuit provides that intent becomes a material issue whenever a defendant pleads not guilty to a charge of conspiracy unless the defendant affirmatively withdraws the issue of intent from the case. *United States v. Roberts,* 619 F.2d 379, 383 (5th Cir.1980); *see also, e.g., United States v. Miller,* 883 F.2d 1540, 1545

(11th Cir.1989); *United States v. Elliott,* 849 F.2d 554, 558 (11th Cir.1988). Intent was an element of the charges which the government had to prove beyond a reasonable doubt even though appellants did not actively contest the issue. Further, the government did not have so strong a case on intent without the extrinsic offense evidence that the admission of the prior convictions would have little additional probative value while greatly prejudicing appellants. Giral's prior conviction was the only evidence pertaining to his intent produced by the government, while the other facts evidencing Hernandez's intent were primarily circumstantial.

The factual differences between the prior bad acts of Giral and Hernandez and the crimes charged in this case do not strike us as significant. We do not see that the trial judge abused his discretion in finding similarity between Giral's possessing with intent to distribute 24 grams of cocaine in New Orleans and Giral's allegedly conspiring to possess and possessing with intent to distribute more than 500 grams of cocaine in Miami. *Cf. United States v. Hicks,* 798 F.2d 446, 451 (11th Cir.1986) (admissibility under Rule 404(b) of evidence of prior dealing in substantially smaller amounts of cocaine upheld), *cert. denied,* 479 U.S. 1035, 107 S.Ct. 886, 93 L.Ed.2d 839 (1987). Likewise we cannot find an abuse of discretion in the trial judge's determination that Hernandez's conviction for conspiring to possess and possessing with intent to distribute an undetermined amount of marijuana materially paralleled the charges of doing the same thing with more than 500 grams of cocaine. *See United States v. Hitsman,* 604 F.2d 443, 448 (5th Cir.1979) (conviction of marijuana offense admissible under 404(b) to prove intent to commit methamphetamine offense).

With regard to the interval between the prior offenses and the crimes charged here, the court in *Hitsman* said that 404(b) evidence would be admissible where "the offenses were only two or three years apart[.]" *Id.* Giral's conviction clearly falls within this limit. Hernandez's six-year-old conviction might carry far less probative weight due

to its "temporal remoteness," *Beechum*, 582 F.2d at 915, were it not for the fact that Hernandez spent much of the interim period in prison and by his own admission was still on probation when arrested by Garcia. Under the circumstances, we do not find that the six-year period between offenses "depreciate[d] the probity of the extrinsic offense." *Id.*

Finally, the district court limited the prejudicial effect of the extrinsic offense evidence by giving the jury cautionary instructions, when the evidence was introduced and again at the close of trial, on the limited use of such evidence. *See United States v. Boon San Chong*, 829 F.2d 1572, 1576 (11th Cir.1987); *United States v. Eirin*, 778 F.2d 722, 732 (11th Cir.1985). We conclude that the district court did not abuse its discretion in allowing the prior convictions to come into evidence under 404(b).

## C. *Denial of Mistrial*

■ Bauta claims that Detective Garcia made several statements during his testimony that individually and cumulatively impaired her right to a fair and impartial trial, and that the trial judge erred in not granting a mistrial based on Garcia's conduct. Ordinarily we review such a claim by determining whether the misconduct prejudiced appellant's substantial rights and whether other significant evidence of appellant's guilt decreased the possibility that the improper testimony had any meaningful effect on the jury verdict. *United States v. Anderson*, 782 F.2d 908, 916 (11th Cir.1986); *United States v. Collins*, 779 F.2d 1520, 1534 (11th Cir.1986). This case presents a curious situation, however. During Garcia's testimony, counsel for Giral and counsel for Hernandez each objected to various statements Garcia made, and each attorney moved the court for a mistrial, both of which motions were denied. Counsel for Giral renewed "all the motions for mistrial that were made in regards to Officer Garcia's unsolicited comments" at the end of the government's case, the end

of the defense case, and along with the motions for acquittal. R3–245. The court denied these renewed motions as well. At no point did counsel for Bauta object to any of the statements now alleged to harm Bauta's right to a fair trial, nor did counsel for Bauta move for a mistrial at any time. Nothing in the record indicates that the court made any provision for the objections and motions of one defendant to apply to all defendants. Had either Giral or Hernandez raised denial of mistrial as an issue on appeal, we would utilize the standard of review detailed above. Because Bauta's counsel did not act at trial to preserve the issue for appeal, however, we may only review the denial for plain error.[9]

■ "The plain-error doctrine.... authorizes the Courts of Appeals to correct only 'particularly egregious errors' ... that 'seriously affect the fairness, integrity or public reputation of judicial proceedings[.]' ... [T]he plain-error exception ... is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citations omitted); *see also, e.g., United States v. Kelly*, 888 F.2d 732, 739 n. 12 (11th Cir.1989); *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir.1989). The record does not show that the trial court committed plain error in refusing to grant a mistrial. The statements of which Bauta complains are four isolated instances of allegedly improper testimony regarding Giral, Hernandez or either of their counsel. Neither Bauta nor her counsel are referred to in these statements. At most, these comments affected Bauta tangentially as a co-defendant with Giral and Hernandez. Within the context of the entire trial and the aggregate of evidence against Bauta, Garcia's remarks fall far short of egregious error seriously affecting the integrity of Bauta's trial.

## D. *Conclusion*

For the foregoing reasons, we AFFIRM the convictions of Yolanda Bauta and Anto-

---

**9.** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R. Crim.P. 52(b).

nio Hernandez; we REVERSE the conviction of Hector Giral for insufficiency of evidence.