[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16113
Non-Argument Calendar

_____

D. C. Docket No. 05-00045-CR-5-RS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RODDERICK TRINARD DAVIS,
a.k.a. Rod,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 14, 2007)

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Rodderick Davis appeals his conviction and 266-month sentence for conspiracy to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii)–(iii), and 846. We affirm.

Davis first contends that the district court's failure to enter judgment for him based on a material variance between the single conspiracy charged in the indictment and the proof at trial of multiple conspiracies was plain error. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (citations and quotations omitted). Here, we find no error at all in the court's decision not to enter judgment for Davis.

"A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." United States v. Alred, 144 F.3d 1405, 1414 (11th Cir. 1998) (citations and quotations omitted). "[T]he arguable existence of multiple conspiracies does not constitute a material variance from the indictment if,

viewing the evidence in the light most favorable to the government, a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt." Id.

There are three relevant factors for determining whether a single conspiracy existed: (1) whether there was a common goal; (2) the nature of the scheme; and (3) the overlap of participants. Id. "In finding a single conspiracy, there is no requirement that each conspirator participated in every transaction, knew the other conspirators, or knew the details of each venture making up the conspiracy." United States v. Taylor, 17 F.3d 333, 337 (11th Cir. 1994). "A single conspiracy may be found where there is a 'key man' who directs the illegal activities, while various combinations of other people exert individual efforts towards the common goal." Id. (citations omitted).

We also have explained that, "to prove a single, unified conspiracy as opposed to a series of smaller, uncoordinated conspiracies, the government must show an interdependence among the alleged co-conspirators." United States v. Chandler, 388 F.3d 796, 811 (11th Cir. 2004). Separate transactions do not constitute separate conspiracies "so long as the conspirators act in concert to further a common goal." Id. (emphasis omitted).

"It is often possible, especially with drug conspiracies, to divide a single

3

conspiracy into sub-agreements . . . . This does not, however, mean that more than one conspiracy exists. The key is to determine whether the different sub-groups are acting in furtherance of one overarching plan." United States v. Calderon, 127 F.3d 1314, 1329 (11th Cir. 1997) (quotation omitted). Moreover, "[t]he fact that various defendants entered the conspiracy at different times . . . performed different functions [and] . . . participated in numerous separate transactions does not convert a single conspiracy to multiple conspiracies." Id. (citation omitted, alteration in original).

In this case, the evidence at trial proved the sole charge of the indictment—that Davis was involved in a conspiracy with Bruce Falson, Trevin Nunnally, and "other people" to distribute cocaine from 2000 to 2005. The government presented testimony that a core group of "other" co-conspirators—Donta Spurlin, Corey Smith, and Marvin Newsome, and, to a lesser extent, Saderrick Noird and Perry Wilson—participated in a common plan from 2000 to 2005 to purchase powder cocaine, convert it into crack cocaine, and sell the crack cocaine to willing purchasers. The evidence also established that Davis supplied his co-conspirators with the powder cocaine from 2003 to 2005, within the time frame alleged in the indictment.

Davis argues that he, Falson, and Nunnally didn't participate in the

conspiracy at the same time because some of them were arrested and in jail during the alleged span of the conspiracy. However, the fact that all co-conspirators did not participate in the conspiracy at the same time does not mean that there was no single conspiracy to sell crack cocaine. As we said in Calderon, "[t]o find that the evidence established a single conspiracy it is not necessary for each conspirator to participate in every phase of the criminal venture, provided there is assent to contribute to a common enterprise." Calderon, 127 F.3d at 1329 (quotation omitted); see also Taylor, 17 F.3d at 337 ("In finding a single conspiracy, there is no requirement that each conspirator participated in every transaction, knew the other conspirators, or knew the details of each venture making up the conspiracy.").

Here, the government presented evidence establishing that the co-conspirators had agreed on the common goal to purchase powder cocaine, turn it into crack cocaine, and sell the crack cocaine to third parties. The evidence also established that Davis provided the powder cocaine to further the conspiracy from 2003 to 2005, when he was indicted. Even if Davis entered the conspiracy after others had exited, the government's evidence established that he participated in the conspiracy with the core group of Spurlin, Smith, and Newsome. Accordingly, there was not a material variance between the single conspiracy alleged in the

5

indictment and the government's evidence at trial.

Davis next contends that the district court erred in allowing the government to admit evidence of his prior marijuana distribution conviction. We review this preserved challenge to the court's decision to admit prior conviction evidence for abuse of discretion. Calderon, 127 F.3d at 1331.

Under Fed. R. Evid. 404(b), prior conviction evidence is not admissible to establish a "defendant's character in order to show action in conformity therewith. Such evidence is, however, admissible if it is relevant to other material issues in that case." Id. at 1330. We use a three part test to determine if evidence of a prior conviction is admissible: (1) the conviction must be relevant to an issue other than a defendant's character; (2) the evidence must be sufficient to support a finding that the defendant actually committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by unfair prejudice. Id.

"In every conspiracy case, . . . a not guilty plea renders the defendant's intent a material issue . . . . Evidence of such extrinsic offenses as may be probative of a defendant's state of mind is admissible unless [the defendant] 'affirmatively takes the issue of intent out of the case.'" United States v. Roberts, 619 F.2d 379, 383 (5th Cir. 1980) (alteration omitted).

Although the prior conviction has less probative value the longer between

the extrinsic conviction and the charged offense, we have found that "[e]xtrinsic offenses more remote than fifteen months have been properly admitted." United States v. Terebecki, 692 F.2d 1345, 1349 (11th Cir. 1982) (citations omitted). We also have found Rule 404(b) evidence to be probative where the prior conviction and the charged offense are "two to three years apart." United States v. Hernandez, 896 F.2d 513, 522 (11th Cir. 1990) (quotation omitted); see also United States v. Pollock, 926 F.2d 1044, 1047–49 (11th Cir. 1991) (concluding that a prior conviction that was more than five years old was not too remote to be probative). In addition, to the extent that evidence of the prior conviction might be prejudicial to the defendant, the district court can mitigate the prejudice by giving a cautionary instruction to the jury on the limited use of such evidence both when the evidence was introduced and again at the close of trial. See Hernandez, 896 F.2d at 523.

Here, the evidence of Davis' prior marijuana distribution conviction was relevant to prove his intent to join the conspiracy. We have held that a prior conviction increases the likelihood that the defendant intended to conspire to commit similar subsequent criminal conduct. See Roberts, 619 F.2d at 383–84 ("Proof that Mr. Roberts had intentionally joined in a conspiracy to operate a gambling business four years prior to his present participation in such an operation increases the likelihood that he had conspired with others to establish and operate

7

the gambling business."); United States v. Beechum, 582 F.2d 898, 913 (5th Cir. 1978) (en banc) ("Once it is determined that the extrinsic offense requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense, the evidence satisfies the first step under rule 404(b). The extrinsic offense is relevant (assuming the jury finds the defendant to have committed it) to an issue other than propensity because it lessens the likelihood that the defendant committed the charged offense with innocent intent."). Davis put his intent in issue by pleading not guilty to the present cocaine distribution charge, and he never conceded the issue or did anything to take intent off the table at trial.

The evidence was sufficient to establish that Davis actually committed the prior offense. The government presented the testimony of the officer who stopped Davis and the others in the car in which the marijuana was discovered and seized. Moreover, the government introduced into evidence a certified copy of the judgment of Davis' marijuana distribution conviction.

Finally, the probative value of the extrinsic evidence is not substantially outweighed by unfair prejudice. The officer testified that he seized the marijuana in October 2002, which is within the time frame of the conspiracy charged in the this case and within a few months of Davis joining the cocaine distribution

8

conspiracy. Thus, the prior marijuana distribution conviction was not too temporally remote to be probative. See Pollock, 926 F.2d at 1047–49; Hernandez, 896 F.2d at 522; Terebecki, 692 F.2d at 1349. To limit any prejudice to Davis, the district court instructed the jury, both when the extrinsic evidence was admitted and at the close of trial, to consider the prior conviction only for the purpose of determining whether he had the necessary intent to join the conspiracy.

Accordingly, we conclude that the district court did not abuse its discretion in admitting evidence regarding Davis' prior marijuana distribution conviction pursuant to Fed. R. Evid. 404(b).

Davis' final contention is that the district court erred in enhancing his sentence based on its finding regarding the amount of cocaine Davis sold to his co-conspirators. According to Davis, the court's drug-quantity finding violated his Sixth Amendment rights, as interpreted by the Supreme Court in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), because it was not based on evidence admitted by him or found by a jury beyond a reasonable doubt.

We have held that "[w]hen the district court applies the Guidelines in an advisory manner, nothing in Booker prohibits district courts from making, under a preponderance-of-the-evidence standard, additional factual findings that go beyond a defendant's admissions." United States v. Smith, 480 F.3d 1277, 1281 (11th Cir.

2007). Here, the district court clearly stated that it was applying the sentencing guidelines in an advisory manner. Thus, there was no <u>Booker</u> violation.[1]

**AFFIRMED.**

---

[1] Davis contends for the first time in his reply brief that the <u>Booker</u> decision cannot be reconciled with <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531 (2004), or <u>Cunningham v. California</u>, 549 U.S.__, 127 S. Ct. 856 (2007). We decline to address this contention, however, since Davis did not raise it in his initial brief. <u>See</u> <u>United States v. Levy</u>, 416 F.3d 1273, 1276 n.3 (11th Cir. 2005) ("[T]his Court . . . declines to consider issues raised for the first time in an appellant's reply brief.").