[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12024
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cr-00096-ACC-GJK-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

XAVIER FRANCISCO VILLANUEVA,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 16, 2018)

Before TJOFLAT, JILL PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

Xavier Francisco Villanueva, along with his codefendants, Ashley Barnett, Keith Romby, and Jose Carmona, was charged with one count of conspiracy to commit sex trafficking of a child, in violation of 18 U.S.C. §1594(c), and one count of sex trafficking of a child, in violation of 18 U.S.C. §§ 1591(a) and 2. After a jury trial, Villanueva was convicted on the conspiracy count and acquitted on the sex trafficking count. On appeal, Villanueva argues that the United States engaged in prosecutorial misconduct by improperly vouching for the credibility of its witnesses and that, but for the improper remarks, the outcome of the trial would have been different. After careful review, we affirm.

## I.    BACKGROUND

### A.    Factual Background

G.E. was 14 years old when she met Ashley Barnett at a friend's house in late 2012. Barnett began giving G.E. drugs and taking her to hotels to "hang out" with men. Doc. 213 at 133-34.[1] G.E. testified that Barnett "did not directly tell [her] to have sex" with the men, but that it was implied that she should do so. Doc. 231 at 135.

One day in early 2013, Barnett introduced G.E. to Keith Romby and Jose Carmona. That night, Barnett showed G.E. how to make seductive poses, and Romby took sexually explicit photographs of G.E. Without G.E.'s knowledge,

---

[1] All citations to "Doc. #" refer to docket entries in the district court record.

2

Romby and Barnett used these photographs to create an online advertisement of G.E. as a prostitute. Afterwards, Romby and Carmona gave G.E. drugs and had sex with her to "show her who [was] in charge." Doc. 214 at 142.

Romby and Carmona told G.E. that she needed to "make . . . up" for the large quantity of drugs she had consumed. Doc. 213 at 144-45. G.E. understood this to mean that she must prostitute herself to make money for them. G.E. had sex with a truck driver, earning $20. She gave the money to Romby, who split it with Carmona. Romby then set up five or six "dates" for G.E., negotiated the price, transported her to the appointments, and collected the proceeds.

A few days later, Barnett and an unknown man transported G.E. to Villanueva's residence. Villanueva gave G.E. drugs and took over the role of negotiating the price for G.E.'s prostitution, transporting G.E. to the locations, and collecting the proceeds. Whenever Villanueva was away from his house, G.E. was forced to stay in the bathroom. Three girls, one of them with a gun, guarded the bathroom door. G.E. nonetheless managed to run away to a nearby gas station where she called 911 and was picked up by the police.

## B.    Procedural Background

Villanueva and his codefendants were each charged with one count of conspiracy to commit sex trafficking of a child, in violation of 18 U.S.C. §1594(c), and one count of sex trafficking of a child, in violation of 18 U.S.C. §§1591(a) and

3

2.  Romby entered into a plea agreement with the United States.  Under the agreement, Romby agreed to testify about all relevant information in exchange for a potential sentencing reduction.  The other defendants proceeded to trial.

### 1.     Opening Statement

Before the government's opening statement, the court instructed the jury as follows:

> You must decide the case solely on the evidence presented here in the courtroom.  . . . Statements and arguments of the lawyers in their opening statements and closing arguments—the lawyers will discuss the case but their remarks are not evidence.  Questions and objections of the lawyers—the lawyers['] questions are not evidence, only the witnesses' answers are evidence.  You should not think that something is true just because a lawyer['s] question suggests that it is.

Doc. 213 at 73-74.

> In its opening statement, the government said:

> Ladies and gentlemen, we're here because these defendants victimized a 14 year-old child by coercing her into their gang world of drugs and prostitution.  They abused her and used her.  They manipulated her and made her sell her body for their financial gain.  And they did it over and over and over again.

*Id.* at 82.  The government immediately followed this statement by saying, "This is what you will learn in this case."  *Id.*  The government concluded its opening statement by stating, "That, ladies and gentlemen, is what we expect the evidence to show in this case," and it asked the jury to find the defendants guilty "[b]ased on the evidence."  *Id.* at 94.

4

## 2.    Referring to G.E. as a "Victim"

While testifying for the government according to the terms of his plea agreement, Romby referred to G.E. as a "victim":

| [Prosecutor]: | Okay. You're in the studio, you were partying, doing drugs? |
|---|---|
| [Romby]: | And Billy invited Ashley over to the studio to hang out and she brought along with her the victim which is G.E. |

Doc. 214 at 127-28.  Barnett's counsel—but not Villanueva's counsel—objected:

| [Counsel for Barnett]: | Your Honor, I'm going to object to the use of the term "victim."  That's an ultimate fact to be decided by the jury. |
|---|---|
| [The Court]: | All right.  Why don't you just refer to her as G.E. |
| [Romby]: | I apologize. |

*Id.*  Almost immediately after this exchange, the government referred to G.E. as a "victim," and Barnett's counsel objected again:

| [Prosecutor]: | And let me ask you exactly.  Were you introduced to the victim? |
|---|---|
| [Romby]: | Actually I was, and Ashley introduced – |
| [Counsel for Barnett]: | Your Honor, I'm going to object. |
| [Prosecutor]: | I'm sorry. |
| [Counsel for Barnett]: | It's the prosecutor now using the term "victim." |

5

| | |
|---|---|
| [Prosecutor]: | I'm sorry, I apologize.  I know. |
| [The Court]: | Okay. |
| [Prosecutor]: | Yes, I did catch myself doing that.  I apologize. |

*Id.* at 128-29.

Barnett's counsel also objected when Patrick Guckian, an FBI Task Force Officer testifying for the government, referred to G.E. as a "child victim" or a "human trafficking victim[]."  Doc. 215 at 133.  The district court sustained the first objection and responded to the second objection by stating, "The jury knows they're to make that determination."  *Id.* at 134.

### 3.    Cross Examination of Romby

While cross examining Romby, Barnett's counsel asked about Romby's obligations specified in his proffer letter to the government.  Romby testified that the provisions required him "to be truthful."  Doc. 214 at 205.  In response, Barnett's counsel asked who "determines if you're truthful," and Romby replied it was his "understanding [that] the government" made that determination.  *Id.* at 205.  Barnett's counsel further asked:  "So as long as the government thinks you're truthful, you're okay, right," and Romby replied, "that was . . . my understanding, [but] the way you're asking these questions, maybe it's up to you, too.  I don't know.  Like I told you, this is my first time being in this situation."  *Id.* at 214-15.

On redirect, the government asked "to clarify for the record" whether Romby had been told "that the government determines the truth in this case." Doc. 215 at 2. Romby twice replied in the affirmative. The government followed up by asking, "What exactly did [the prosecutor] tell you about the government determining the truth or what the truth might be?" *Id.* Romby replied, "[The prosecutor] didn't say determine, but she said I had to tell the truth." *Id.* at 3. Romby then said from "[his] understanding, the courts, the jury, the judge . . . everybody" determines the truth. *Id.*

### 4.    Closing Argument

During the closing argument, Villanueva's counsel attempted to undermine G.E.'s credibility. Villanueva argued that G.E. was motivated to lie and pointed out that her testimony was inconsistent with the recordings of her police interviews. He also noted that G.E. initially had given police the wrong phone number for Barnett. Barnett's counsel also pointed out that G.E. had provided inconsistent statements describing the details of who had posed her for the sexually explicit photographs. Initially she had told law enforcement agents that Romby had posed her, but later said that she had been "trying to protect [] Barnett" and that it actually was Barnett who had posed her. Doc. 216 at 66.

Immediately following defendants' closing arguments, the government in its rebuttal addressed G.E.'s inconsistent statements. The government conceded that

7

"[i]n fact, [G.E.] initially said that [Barnett] was not there because she was trying to protect [Barnett]." *Id.* at 72. The government continued that "[w]hen [G.E.] came in [to the court] she told the truth. She raised her hand and she told the truth. And you can tell that was difficult for her because on cross-examination she was still trying to protect [Barnett]. She was still so beholden to her." *Id.* at 72-73.

After the closing arguments, the district court instructed the jury as follows:

Your decision must be based only on the evidence presented during the trial. You must not be influenced in any way by either sympathy for or prejudice against the defendants or the government.

*Id.* at 79-80.

The jury convicted Barnett and Carmona on both counts. The jury convicted Villanueva on the conspiracy count and acquitted him on the sex trafficking count. The district court sentenced him to 235 months in prison. Villanueva appealed.

## II.    STANDARD OF REVIEW

Typically, "this court reviews claims of prosecutorial misconduct *de novo* because it is a mixed question of law and fact." *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008). But where, as here, the defendant did not object at trial, we review only for plain error. Plain error occurs if (1) there was error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Lejarde-Rada*, 319 F.3d 1288, 1290 (11th Cir.

8

2003).  An error is plain if it is "clear" or "obvious."  *United States v. Olano*, 507 U.S. 725, 734 (1993).

## III.    DISCUSSION

On appeal, Villanueva argues that the government committed prosecutorial misconduct by improperly vouching for its witnesses' credibility.  "Ordinarily, it is improper for a prosecutor to bolster a witness's testimony by vouching for that witness's credibility."  *United States v. Bernal-Benitez,* 594 F.3d 1303, 1313 (11th Cir. 2010).  A prosecutor's comments amount to improper vouching if "the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness'[s] credibility."  *United States v. Knowles*, 66 F.3d 1146, 1161 (11th Cir. 1995).  This test may be satisfied in two ways:  the prosecution may (1) place the prestige of government behind the witness by making explicit personal assurances of the witness's veracity or (2) imply the witness's veracity by indicating that information not presented to the jury supports the testimony.  *Id.*

"The prohibition against vouching does not forbid prosecutors from arguing credibility, which may be central to the case."  *United States v. Hernandez,* 921 F.2d 1569, 1573 (11th Cir. 1991).  "Thus, [m]erely acknowledging that adverse legal consequences flow from perjury" does not constitute improper bolstering or vouching.  *United States v. Sosa*, 777 F.3d 1279, 1295 (11th Cir. 2015) (alteration in original) (internal quotation marks omitted).  Additionally, we

9

have "recognized an exception" to the general rule against vouching, "the so-called 'fair response' rule, that entitles a prosecutor to respond to arguments advanced by defense counsel in his or her statement to the jury." *United States v. Lopez,* 590 F.3d 1238, 1256 (11th Cir. 2009) (internal quotation marks omitted).

To establish prosecutorial misconduct, not only must "the remarks be improper," but also "the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998) (internal quotation marks omitted). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome would be different." *United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995).

Four factors guide us in determining whether a prosecutor's conduct had a reasonable probability of changing the outcome of a trial:

> (1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused.

*Lopez*, 590 F.3d at 1256. Improper statements may be rectified by a curative instruction. *Id.* We consider whether a defendant's substantial rights were prejudiced "in the context of the entire trial and in light of any curative instruction." *Wilson*, 149 F.3d at 1301 (internal quotation marks omitted).

Villanueva challenges as improper four remarks by the government.  First, Villanueva argues that during opening statement the prosecutor improperly asserted her personal belief in the witnesses' truthfulness and implied that the jury trial was unnecessary.  Second, he argues that the prosecutor improperly implied a personal belief in G.E.'s truthfulness by referring to her as a "victim."  Third, he argues that the prosecutor improperly asserted knowledge of Villanueva's guilt by eliciting testimony that it was up to the government to determine the truth.  Fourth, he argues that the prosecutor improperly asserted during closing argument that G.E. had told the truth on the stand.  Villanueva claims that these remarks both individually and cumulatively deprived him of his right to a fair trial.  We address Villanueva's arguments in turn.

## A.    The Government's Opening Statement

Villanueva challenges as improper the following statement that the government made during its opening statement:

> [W]e're here because these defendants victimized a 14 year-old child by coercing her into their gang world of drugs and prostitution. They abused her and used her.  They manipulated her and made her sell her body for their financial gain.  And they did it over and over and over again.

Doc. 213 at 82.  Villanueva argues that this statement improperly implied that the government's witnesses were truthful and that the jury trial was unnecessary.  We disagree.

In *Sosa*, we explained that we must look at the government's statements in "relevant context."  777 F.3d at 1297.  In that case, the context demonstrated that the following, much more direct, comment about truthfulness made by the government during closing argument was not improper:

> [Defendants] are saying, "I had no idea about all of this.  I was duped.  I was an innocent bystander."  That's not true.  I will talk about each of them separately because there are two defendants here.  You will have to consider what each one of them knew.  You will have to consider them separately.

*Id*.  We decided that the relevant context showed that "the prosecutor made it sufficiently clear that he was urging the jury" to make a conclusion "based on a consideration of the relevant evidence" by "immediately follow[ing] that statement by asking the jury to consider the evidence concerning what the defendants knew." *Id*.  We thus concluded that the defendant failed to establish any error.  *Id*.

Like the prosecutor in *Sosa* who immediately followed the statement in question by asking the jury to consider the evidence, the prosecutor here immediately followed the objected-to statement by explaining that "[t]his is what you will learn in this case."  Doc. 213 at 82.  The government also concluded the opening statement by stating, "That, ladies and gentlemen, is what we expect the evidence to show in this case," and by asking the jury to find the defendant guilty "[b]ased on the evidence."  *Id.* at 94.  A consideration of the relevant context shows that the government's statement was not improper.  *See also United States v.*

12

*Lacayo*, 758 F.2d 1559, 1565 (11th Cir. 1989) (holding that the prosecutor's comment that "what you are about to hear is a true story" was not improper where the government prefaced the statement with the standard language of "The evidence will show and I submit to you").

But even if the statement had been improper, the district court cured any prejudice by issuing curative instructions. *See Lopez*, 590 F.3d at 1256. At the beginning of the trial, the district court instructed the jury that "[s]tatements and arguments of the lawyers in their opening statements and closing arguments . . . are not evidence." Doc. 213 at 73. At the end of the trial, the district court charged the jury: "Your decision must be based only on the evidence presented during the trial. You must not be influenced in any way by either sympathy for or prejudice. . . . [A]nything the lawyers say is not evidence and isn't binding on you." Doc. 216 at 79-81. We presume that the jury followed these instructions. *See United States v. Shenberg*, 89 F.3d 1461, 1472 (11th Cir. 1996). For these reasons, Villanueva has failed to show error, much less plain error, based on the government's opening statement.

## B.    Referring to G.E. as the "Victim"

Villanueva next argues that the prosecutor's use of the word "victim" when referring to G.E. during Romby's direct examination was improper.[2]  Villanueva argues that using the word "victim" expressed the prosecutor's personal belief in G.E.'s testimony and explicitly advised the jury that G.E. was in fact a victim.

In *United States v. Suarez*, 601 F.3d 1202 (11th Cir. 2010), we found no reversible error despite the prosecutor's suggestion that the witness was telling the truth because the district court made "multiple attempts to ameliorate any possible prejudice to the jury" by sustaining the objections and instructing the jury to evaluate the witnesses' credibility.  *Id.* at 1218.  Like the district court in *Suarez*, the district court in this case also made multiple attempts to ameliorate any prejudice.  The district court sustained Barnett's objections arguing that G.E.'s status as a victim was an ultimate fact to be decided by the jury.[3]  The district court also instructed the jury that "[q]uestions and objections of the lawyers . . . are not evidence."  Doc. 213 at 73.  Again, we presume that the jury followed these instructions.  *See Shenberg*, 89 F.3d at 1472.  On this record, the government's use

---

[2] Barnett objected to this usage, but at no point did Villanueva, nor did he adopt her objection.  We thus review for plain error.  *See United States v. Hernandez*, 896 F.2d 513, 523 (11th Cir. 1990).  Because we find no error, plain or otherwise, the standard of review is not determinative, however.

[3] When another government witness referred to G.E. as a "child victim" and Barnett objected again on the same basis, the district court repeated the instruction, stating, "[t]he jury knows they're to make that determination."  Doc. 215 at 134.

14

of the term "victim" did not constitute prosecutorial misconduct warranting reversal.

## C.     The Government Determining the Truth

Villanueva argues that the following exchange between the government and Romby during a redirect examination was improper because it suggested that the government was the final arbiter of the truth and amounted to improper vouching:

> [Government]:     I want to clarify for the record. Has [the prosecutor] ever told you that the government determines the truth in this case?"
>
> [Romby]:     Yes, ma'am.
>
> [Government]:     Sorry?
>
> [Romby]:     Yes, ma'am.

Doc. 215 at 2.  He argues that this exchange implied that his guilt was pre-determined.

In context, however, the government's questions were not improper.  While questioning Romby about his proffer letter to the government, Barnett's counsel asked Romby who determined if he was being truthful.  Because Romby replied, "[from] my understanding, the government," Doc. 214 at 205, the government was entitled to question him about his answer "to clarify for the record . . . [w]hat exactly . . . [the prosecutor] [told him] about the government determining the truth or what the truth might be."  Doc. 215 at 2-3.  After the government made a

15

number of attempts to clarify Romby's statement that it was up to the government

to determine the truth, Romby replied that "[the prosecutor] didn't say *determine*,

but she said I had to tell the truth."  *Id.* (emphasis added).  This context reveals that

the government's questions were not improper:  the government was in fact trying

to *eradicate* the impression that the government determined Villanueva's guilt in

this case, and it immediately attempted to clarify the meaning of Romby's

erroneous answer.  Further, there was no reasonable probability that Romby's brief

misstatement, which was promptly corrected, affected the outcome of the trial.

Accordingly, Villanueva has failed to show plain error.

### D.    The Government's Closing Argument

Villanueva argues that the following remark the government made during

closing argument was improper:  "When [G.E.] came in here[,] she told the truth.

She raised her hand[,] and she told the truth."  Doc. 216 at 72.  He argues that the

impropriety was blatant and uncontroverted.

In support of his argument, Villanueva relies on *United States v. Lamerson*,

457 F.2d 371 (5th Cir. 1972).[4]  In *Lamerson*, the defendant objected to the

following statement the government made during its closing argument as improper:

> Again, you are supposed to judge the demeanor and the way a witness
> conducts himself on the stand; whether you would believe or not, that

---

[4] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981 are binding on this Court.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

16

is your job to determine who you can believe and who you can't believe.    And, I think Officer McPherson and Agent Stymus . . . showed sincerity.  I *firmly believe* what they said is the truth.  *I know it is the truth*, and I expect you do, too.

*Id.* at 372.  We determined that with its statement, "I know it is the truth," the government had gone beyond the "mere indiscretion" of simply providing a personal opinion about the truthfulness of the witnesses' testimony.  *Id.*  Rather, the government had "overstepped the bounds of propriety" by implying it had outside knowledge supporting its belief in its witnesses' testimony.  *Id.*  Its comment therefore amounted to reversible error.

But unlike the prosecutor in *Lamerson* who implied to the jury that the government had outside knowledge of the veracity of the witness's testimony, the prosecutor here did not imply that the government had outside knowledge for believing G.E.'s testimony.  Instead, the comment—a "fair response" to Villanueva's and Barnett's attacks on G.E.'s credibility, *Lopez*, 590 F.3d at 1256—suggested that the consequences of perjury made it more likely that G.E. was telling the truth.  *See Sosa*, 777 F.3d at 1296 (holding that prosecutor's emphasis, during rebuttal, of witness's absence of motivation to commit perjury was not placing the prestige of the government behind the witness, but merely acknowledging the adverse legal consequences of perjury, and therefore was not plainly erroneous).

17

Even if the government's statement had been improper, however, it did not prejudice Villanueva's substantial rights. *See Lopez*, 590 F.3d at 1257. Given the context, the statement had little tendency to mislead the jury or prejudice Villanueva. The statement was isolated and minimal—only two sentences in eight pages of the government's closing argument during a four day trial. *See id.* Furthermore, the district court issued curative instructions, twice explaining that the attorney's arguments were not evidence. *See id.* The government's statement during closing argument therefore did not amount to plain error.[5]

## IV.    CONCLUSION

For the reasons discussed above, we affirm Villanueva's conviction.

**AFFIRMED.**

---

[5] We also reject Villanueva's argument that the above statements resulted in cumulative error. "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Lopez*, 590 F.3d at 1258 (internal quotation marks omitted). We conclude, "from our review of the trial as a whole, that the cumulative effects of [these] alleged errors did not deny [Villanueva] a fair trial." *Id.*